Matter of Sandra GREENWOOD, a Minor.

William R. Earnest and Maude Earnest,
Petitioners, Appellants,

Joe E. Greenwood and Edna Lee Greenwood,
Respondents.

No. 29382.

St. Louis Court of Appeals.
Missouri.

March 20, 1956.

Motion for Rehearing or to Transfer
to Supreme Court Denied
April 13, 1956.

Roy Hamlin, Hannibal, for appellants.

Branham Rendlen, Rendlen & Rendlen, Hannibal, for respondents.

William B. Spaun, Hannibal, for Guy E. Greenwood, father of the minor.

WOLFE, Commissioner.

This is an action wherein the maternal grandparents sought to adopt their granddaughter and a paternal uncle and his wife sought to have custody of the child transferred to them for the purpose of adoption. Both petitions were heard as one case, which resulted in a denial of the petition of the grandparents and the granting of a transfer of custody of the child to the uncle and his wife for the purpose of adoption.

The matter originated by Maude Earnest filing a petition in which she was later joined by her husband, William Earnest. They sought to adopt Sandra Greenwood who was their granddaughter. The petition charged that the child's father abandoned her and

had not supported her for more than a year. The father, Guy Greenwood, was made a party defendant and answered by denying that he had abandoned the child and further alleged that the petitioners had refused to deliver possession of the child to him and that he had sought to compel them to do so by a writ of habeas corpus.

After the filing of the petition by the Earnests another petition was filed in the same court by Joe E. and Edna Greenwood. They sought to have custody of Sandra transferred to them so that they might seek her adoption at the expiration of the required period of legal custody. These petitioners were the brother and sister-in-law of the father, Guy Greenwood. To this second petition the first petitioners filed an answer and later as to the second petition filed an application for a change of venue. The trial judge held that both petitions should be heard as one case and that since he was diqualified as to one petitioner he was disqualified as to both. He directed both causes to be transferred to another circuit and the first petitioners then sought a writ of prohibition in the Supreme Court on the grounds that the judge was not disqualified to hear their petition. The Supreme Court granted the writ and held that the court properly considered the petitions, in effect, as one action but it held that the case should remain in the county where the petitions were filed and that a judge from another circuit should be assigned to try it. State ex rel. Earnest v. Meriwether, Mo.Sup., 270 S.W.2d 20. It is from the decree of the following trial that this appeal was taken.

Sandra Greewood was born in Hannibal, Missouri, and when she was about three weeks old she and her mother moved to the home of the mother's parents. At about this time Sandra's mother was divorced from Guy Greenwood. The mother and child continued to live with the Earnests up to the time of the death of the mother which occurred when Sandra was about four years old. During the time Sandra's mother was living she was employed and consequently both before and after her death Sandra was cared for by her grandmother, Mrs. Earnest.

Shortly after the death of Sandra's mother, Mrs. Earnest filed a petition to adopt Sandra. After this petition was filed Sandra's father, Guy Greenwood, sought to obtain custody of the child by a writ of habeas corpus. In the return to the writ it was alleged that Guy Greenwood was an unfit person to have the care of the child. The issues presented were never tried and the matter remained undisposed of at the time of the trial of the case now under consideration.

The Earnests own a two-story frame house in Hannibal which occupies most of the lot upon which it is built. The only yard is a small space in front between the sidewalk and the house. At the time of the trial the Earnests had owned the place for about seven years. They paid $1,400 for it and still owed about $1,000 of the purchase price. The house is divided into two apartments. One apartment of three rooms on the first floor is rented for $30 per month and the Earnests and their granddaughter live in four rooms on the second floor. The apartment occupied by the Earnests is clean and well kept.

Mrs. Earnest is not employed but Mr. Earnest works for the City of Hannibal and earns $225 a month. In addition to his earnings they receive $46 per month for the support of the child from Social Security benefits earned by the child's mother during her employment. This last item, plus the rent and Earnest's salary, gives them a total monthly income of $301. Mr. Earnest's employment, however, is seasonal so the income is not always at this level.

Earnest was sixty-five years old and his wife sixty-two years old at the time of the trial, and both of them were in good health. They have four adult children of their own. Both the petitioners and the children are very fond of Sandra and she is well cared for. She is a bright, properly-adjusted child according to the report of the social worker who investigated the home. Mrs. Earnest takes her to and from school and affords the child all the care a good mother would. Her children and neighbors who

testified all commended her highly for the manner in which Sandra is being reared.

The other petitioners, Joe E. and Edna Lee Greenwood, live in Dallas, Texas. Mr. Greenwood was at the time of trial thirty-eight years of age and his wife was thirty-five. Both of them were employed. Mrs. Greenwood is a ledger clerk for an insurance company and earns $282 a month. Joe Greenwood is a salesman for a wholesale coffee company and has an average income of $600 per month. With the exception of three years while he was serving with the United States Air Corps they were living in Texas.

Both have been members of the Presbyterian Church and they attend fairly regularly. They would like to have a family but. Mrs. Greenwood is physically incapable of bearing children so they have wanted to adopt Sandra for some time. Mrs. Greenwood stated that if the custody of Sandra is awarded to them, she intends to give up her employment. They also have a plan to adopt another child so that they will have a family. They have seen Sandra only on one occasion other than the time they saw her at the trial. This was on a visit to the Earnest home where they talked to the child and held her. They plan to give Sandra a university education and proper religious training.

Seven residents of Dallas testified by deposition that the Greenwoods were persons of very good character, who are active in church and civic affairs.

They own an apartment house on which they still owe about $7,200. They have refused an offer of $18,500 for the property. It has four family units and a fifth apartment over a garage. They live in one of the apartments, which is very well furnished. There is a yard measuring about 100 feet by 50 feet in the rear and a public school 2½ blocks away. Mrs. Greenwood's mother lives with them and they contribute to her support although she owns a farm from which she receives a small income. A case study was made of the Greenwoods by the Children's Bureau of Dallas, Texas, and it confirms the characteristics of the Greenwoods that caused them to be held in high esteem by the witnesses who testified in their behalf. There is also a confirmation of their financial status. It appears from Greenwood's testimony that his net worth at the time of trial was about $27,345.

Guy Greenwood, the child's father, has remarried and is living in Hannibal. He has two children by the second marriage. At one time he was employed as a taxi driver and his wife works as a waitress. He has a long record of arrests for drunkenness, peace disturbance, and traffic violations for which he was fined on some fifteen different occasions. He was confined to a hospital with a broken leg at the time of the trial, but he testified by deposition that he knew his brother and sister-in-law desired to adopt Sandra, that he consented to a transfer of Sandra's custody, and that he would consent to the adoption.

Photographs of the home of Joe and Edna Greenwood were in evidence. They showed it to be a spacious and pleasant appearing place. There was a photograph of the Earnest home which is quite modest by comparison and is located in a rather congested district in Hannibal.

The issues before the court, as stated by the distinguished counsel for the appellants, confronted it "with the unpleasant and difficult task of deciding which of the two adoptive couples should be awarded the custody" of Sandra Greenwood. Counsel zealously contends that the court erred in awarding the custody of Sandra to the Greenwoods. He bases this upon the undisputed fact that at present Sandra is well cared for and is living in the only surroundings she has ever known and is unquestionably enjoying the love of her devoted grandparents, who are people of fine character. It is asserted that the court's decision was reached by giving undue importance to the financial status of the two parties. The appellants quite properly maintain that in awarding the custody of the child to one of two contenders for it, the comparative wealth of one should not outweigh the adequate care and affection available to the child through the other.

The financial status of the parties is but one of many things to be considered in order to determine which of the parties will provide the best home and environment. State ex rel. St. Louis Children's Aid Soc. v. Hughes, 352 Mo. 384, 177 S.W.2d 474; Child Sav. Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A.L.R. 1068. There is nothing before us, however, that would lead us to believe that the trial judge considered the greater affluence of the Greenwoods to be a compelling factor in their favor.

The appellants also quite seriously contend that the emotional strain upon a child of Sandra's age caused by being uprooted from familiar surroundings and separated from those she has looked upon up to this time as her parents might seriously affect her mental and physical welfare. There will no doubt be some period of adjustment in which the child will miss her former home very much. She, also, perhaps throughout her life will cherish and love her grandparents. There is, nevertheless, in the make-up of most children an infinite source of affection from which they bestow their love with generous liberality upon all who seek it. They adjust readily, particularly where the new surroundings to which they are obliged to go are pleasant. In those cases where the child or the prospective adoptive parents do not adjust well to each other, we have the safety period of custody provided by the statute, section 453.080 RSMo 1949, V.A.M.S., which affords an opportunity for the court and for the parties to see how the child is reacting to its new surroundings, and to avoid the change if it appears improper. It does not appear that the trial judge was experimenting with Sandra's welfare or that the change would put an undue emotional strain upon her.

■ It is asserted that the decree does not dispose of all the issues in the case inasmuch as there was pending the action in habeas corpus which was filed by the father of the child after Mrs. Earnest filed her petition to adopt Sandra. A writ of habeas corpus will not lie to obtain the custody of a child when the question of its custody is pending before a court of competent jurisdiction. In re Wakefield, Mo.Sup., 283 S.W.2d 467; Bell v. Catholic Charities of St. Louis, Mo.App., 170 S.W.2d 697; Thelen v. Ekberg, 237 Mo.App. 258, 167 S.W.2d 645. Since the petition for adoption was pending at the time the writ was sought, nothing could have been done by virtue of the writ and all the issues raised by it have been resolved as it was directed to the Earnests and the present decree takes the custody of Sandra from them.

■ In their argument plaintiffs discuss many possible contingencies that may arise, in the future, but it is sufficient for the court to determine the probable consequences of the transfer of Sandra's custody. The fact that the respondents are not residents of Missouri is no bar to their custody of the child. If it were otherwise, a Missouri child might be denied the only home and parents available to it simply because the home was in another state.

■ To weigh the probable consequences of the transfer we must project our view toward Sandra's future and not toward the momentary hurt of separation. Several matters were doubtlessly considered by the trial judge to favor the Greenwoods' petition. There was their home and its surroundings; the greater ability of the Greenwoods to provide for and educate the child; and perhaps the most important is the age of the Greenwoods. They are a young couple who can be young with Sandra as she matures. The Earnests who have carried the task of raising one family and have helped Sandra to a fine start have reached the age where, in the usual course of things, a child may become a burden, and at a time when Sandra needs them most they may be no longer here to help her. There is no reason why the parties should remain adversaries and probably nothing will prevent the Earnests from filling the usual role of grandparents who have a grandchild living apart from them.

These things and perhaps also the thought that Sandra might be saved future embarrassment from the conduct of her father

if she moved from Hannibal, were matters that all weighed in favor of the respondents.

It consequently appears that the decree is not erroneous, and it is the recommendation of the Commissioner that it be affirmed.

PER CURIAM.

The forgoing opinion of WOLFE, C., is adopted as the opinion of the court.

The decree of the Hannibal Court of Common Pleas is accordingly affirmed.

ANDERSON, P. J., and RUDDY and MATTHES, JJ., concur.