In the Matter of J.——— L.——— H.———, a Minor.

Barbara FRENCH, Petitioner, Respondent,

v.

Daisy FRENCH, Petitioner and Intervenor, Appellant.

No. 31226.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 16, 1964.

Louis Gilden, Schwartz, Schwartz & Gilden, St. Louis, for appellant.

Thos. J. Neenan, City Counselor, John J. Fitzgibbon, Asst. City Counselor, William R. O'Toole, St. Louis, for respondent.

ANDERSON, Judge.

This is an action filed in the Juvenile Division of the Circuit Court of the City of St. Louis on October 18, 1961, by Barbara French, through her next friend, Roy Cleghorn, the object of which was to secure an order from said court transferring the custody of her three year old male child, born out of wedlock, to Children's Services of St. Louis, and an order permitting her to waive the necessity of her consent to a future adoption of said child. On the same day there was filed a waiver of consent to the future adoption of said child which was signed by Barbara French and Roy Cleghorn, her next friend. Also on said day, Children's Services filed a pleading in said cause, in which it joined in the prayer of the petition filed by Barbara French, and consented to accept custody of said child.

On October 20, 1961, the cause came on for hearing at which time Mrs. Daisy French, the grandmother of the child, who had his actual custody, appeared in court with her attorney, Louis Gilden. The latter requested a continuance of the case so that he might investigate the matter. The court granted this request and continued the cause to October 26, 1961. Cleghorn was not in court at the time, and after being informed that Cleghorn was ill, the court entered an order appointing Mr. William R. O'Toole, a member of the bar, as guardian ad litem for Barbara French.

On October 26, 1961, Louis Gilden filed the following memorandum in the cause, "Louis Gilden enters his appearance as attorney for Daisy French, the grand-

mother," to which the court added the following words, "and an informant to the court." A record entry was made in said cause in conformity with the said memorandum. The cause was then passed to November 9, 1961.

On November 9, 1961, the cause again came on for hearing, and on said day Mr. O'Toole filed a report of his investigation of the matter and recommended that the transfer of custody, as prayed in Barbara French's petition, be granted.

Mr. Gilden appeared at said time representing Mrs. Daisy French, the grandmother. Prior to the introduction of any evidence in the case, Mr. Gilden, representing the grandmother, asked leave to file a petition for transfer of custody to and adoption by his client, Daisy French, the grandmother. He referred to his client as, the informant, and this proposed pleading as a "third-party" petition. He also stated that he had not prepared such written pleading, but stated, "I would like to present this to the court orally and then, later on, a written third-party petition * * *." After considerable discussion the court announced he would delay ruling on the request for the reason he wanted to first dispose of the Barbara French petition.

The cause then proceeded to trial. Mr. O'Toole appeared for Barbara French, and Mr. Gilden appeared for Daisy French, the grandmother, who is designated in the transcript as "Informant." In petitioner's case, in chief, the following witnesses testified; Barbara French, Roy L. Cleghorn, Harriet Lee, a deputy Juvenile Officer, who had worked on the case, and Margaret Moffatt, a welfare worker, who had also worked on the case. Petitioner gave testimony which fully supported her petition, as did the other witnesses for petitioner. Mr. Gilden on behalf of his client interposed objection to testimony which he considered inadmissible, and cross-examined each witness. By his cross-examination, he sought to bring forth testimony to dis-

credit petitioner's moral fitness to have custody of the child, and which tended to show abandonment of the child by petitioner. He also sought to establish by cross-examination of petitioner that she did not have the mental capacity to give consent to the transfer of custody to Children's Services, and had previously testified, in a statement taken in Mr. Gilden's office, that her desire was that the grandmother should have the child and that she desired to revoke her consent given the Children's Agency. He also brought out that the child has lived at the grandmother's house since it was born, and has been properly cared for by the grandmother. He also, by his questions on cross-examination, attempted to show that petitioner was living with one, Tony Mendoza, and that the latter by undue influence had coerced petitioner to bring the suit, and that she did not do so of her own free will.

Petitioner's other witnesses were also thoroughly cross-examined by Mr. Gilden in an attempt to break down petitioner's case.

At the close of petitioner's case, Mr. Gilden presented to the court for filing, a petition for adoption by Daisy Lee French. When presented the court made the following ruling:

"The Court: I don't know whether it can be filed in this case or not * * * you can file it. I think the clerk better make a separate case for it, and then we can always order it consolidated."

The petition for adoption was then filed, and was made Cause No. 72,244 in said court. Said petition alleged that Barbara French had for a period of one year immediately prior to the filing of the petition, willfully abandoned the child and willfully neglected to provide him with proper care and maintenance.

Mr. Gilden, representing Daisy L. French (referred to in the transcript as "Inform-

ant" or "Third-Party Petitioner"), then placed on the stand thirteen witnesses in an attempt to show that it would be to the best interest of the child to leave it in the custody of the grandmother. To defeat petitioner's case, there was also evidence calculated to show abandonment and non-support as alleged in the petition for adoption. This evidence went in without objection that it was not a proper subject of inquiry in said proceeding.

The evidence took a very wide scope and matters relating to the home life of petitioner and Mrs. Daisy French were fully covered. One of these witnesses was Dr. Dermott Smith, Acting Director of the department of Neurology and Psychiatry at St. Louis University School of Medicine, who treated petitioner for emotional disturbance, seeing her on five occasions, but stated she was not psychotic. The Court called Tony Mendoza, the person with whom it was claimed petitioner lived.

At the conclusion of the testimony the court sustained Barbara French's petition, and in its order granted Barbara French permission to waive the necessity of consent to future adoption, and approved the waiver executed by her, dated October 16, 1961. The judgment was entered November 20, 1961.

Also at the conclusion of the case the transcript shows the following:

"Mr. Gilden: And what are you ruling on, my petition for consolidation and adoption?

"The Court: I am not going to rule upon the adoption petition at this time, I don't think I can.

"Mr. Gilden: Well, are you going to consolidate the causes?

"The Court: No, I am not going to consolidate the causes."

On November 27, 1961, Daisy French, as "Intervenor and Informant", filed in cause No. 72,138 a combined motion for new trial, and motion to set aside the court's order denying the consolidation of the case with cause No. 72,244, the adoption proceeding instituted by Mrs. Daisy French, or in the alternative to overrule petitioner's petition. In said motion it was averred, "That the Court erred in not ruling on the petition for adoption which this petitioner asked to be consolidated with this transfer of custody proceeding, since said adoption proceeding involves the same child."

On the same date, November 27, 1961, the grandmother, petitioner in Cause No. 72,244, the adoption proceeding, filed in said adoption proceeding a motion to set aside the order of the court denying consolidation of said cause with Cause No. 72,138, the cause filed by Barbara French, and to sustain her (Mrs. Daisy French's) petition. Paragraphs 2 and 3 of said motion are as follows:

"2. That said proceedings arise out of the same subject matter and that the evidence in cause No. 72,138 would be applicable to cause No. 72,244 which is the subject of this adoption proceeding.

"3. That under the evidence and the facts in cause No. 72,138, which should have been consolidated with cause No. 72,244, the evidence established that the best interests of the child would be with the grandmother Daisy French."

There was no request for a further hearing in order to present additional evidence in support of the petition for adoption.

On January 25, 1962, the court rendered the following opinion:

"At the outset of the trial in cause No. 72,138, which began November 9, 1961, no petition or pleading of any kind was filed stating the position of Daisy French, although the matter had been previously set on October 30,

1961, and continued at the request of counsel for Daisy French. Hence, the Court questioned the right of Daisy French to formally intervene. The record did not show the position of Daisy French. However, the Court took the position that any person who had evidence to offer with respect to the best welfare of the child should be heard.

"The hearing began on November 9th, 1961, and was partially heard and passed for further hearing to November 15th, 1961. Upon the latter date, the petition for adoption was filed by Daisy French with the clerk and separately numbered. Counsel for Mrs. Daisy French orally moved consolidation of the adoption petition with a cause in trial. The adoption petition involved a minor mother not served, and a minor child with no guardian. It is thus apparent that the adoption petition was filed out of time and improperly presented.

"The Court does not believe the preponderance of the evidence shows the mother willfully abandoned or willfully neglected to provide the child with proper care and maintenance for one year immediately prior to the filing of the petition. But even if it did so show, the Court does not believe the best interest of the child would be with Daisy French under all the evidence.

"Counsel for Daisy French complains that the Court's ruling placed his client in a position where she cannot appeal. It might be suggested that counsel made the record—not the Court. However, since counsel takes the position the evidence taken upon the child's mother's petition to transfer custody to Children's Services would be applicable to the adoption petition, and is decisive thereof, and that the evidence shows the best interest of the child would be with Daisy French, and

since apparently all the evidence to be submitted is in, and the matter should be promptly and finally decided in the interest of the child, the Court will make final disposition of the case. It is ordered that:

"'1. The motion of Daisy French to set aside the order denying consolidation is sustained, and said Causes (being #72138 and #72244) are hereby ordered consolidated.

"'2. The motion of Daisy French for new trial, or in the alternative to overrule petition of Barbara French for transfer of custody, is overruled.

"'3. The motion of Daisy French to sustain her petition for adoption is overruled, and said petition is hereby dismissed.'"

The orders and judgments in conformity with said opinion were entered of Record on January 25, 1962.

On January 31, 1962, Daisy French, filed, in the consolidated causes, a motion to set aside its judgment denying said petition for adoption and to grant her a new trial. The gist of said motion was that the court erred in sustaining her previous motion to set aside the order denying consolidation and entering judgment against her on her petition for adoption without according her a hearing on said petition for adoption, and that the court erred in finding against her on her petition for adoption. It was also alleged that if the court's order was permitted to stand, she, Daisy French, would be deprived of her rights to due process of law under Article 1, § 10, of the Constitution of Missouri, V.A.M.S., and the Fourteenth Amendment of the Constitution of the United States.

On the same day, Daisy French, also filed in the consolidated cause a motion for new trial, containing substantially the same averments as were contained in the above mentioned motion.

The court never ruled on the above motions. They are, therefore, deemed to have been denied 90 days after January 31, 1962. Civil Rule 78.04, V.A.M.R. In the meantime, and on January 2, 1962, Daisy French gave notice of appeal from the judgment of the court sustaining the petition of Barbara French, and overruling her petition for adoption and dismissing same.

Appellant has moved that this cause be transferred to the Supreme Court on the ground that a constitutional question is involved. In her motion to set aside the judgment denying her petition for adoption and for a new trial, and in her motion to vacate the Court's order of January 25, 1962, it is alleged that the order sustaining her motion to consolidate the two cases and finding against her on her petition for adoption without according her a hearing of said consolidated cause, or on her petition for adoption, if permitted to stand, would deny appellant her right to due process of law in contravention of Article 1, Section 10, of the Constitution of the State of Missouri and the Fourteenth Amendment to the Constitution of the United States.

As heretofore stated appellant in her motion entitled, "MOTION TO SET ASIDE ORDER OF COURT DENYING CONSOLIDATION, AND MOTION FOR COURT TO SUSTAIN PETITIONER'S PETITION FOR ADOPTION", which was filed on November 27, 1961, it was averred that the court erred in not consolidating the two causes, and in not ruling on the petition for adoption. In said motion there was no allegation that a further hearing should be granted in order that she might present additional evidence in support of her petition for adoption. On the contrary, it was alleged in said motion that the evidence adduced at the hearing in cause No. 72138 would be applicable to the adoption case, and, in her motion for new trial, filed on the same day complained

that "The court erred in not ruling on the petition for adoption which this petitioner asked to be consolidated with this transfer of custody proceeding, since said adoption proceeding involves the same child". It would seem, therefore, that the court in making its order of January 25th 1962 adopted a procedure which was in accordance with appellant's wishes. It consolidated the two cases and ruled on appellant's petition for adoption on the evidence adduced at the hearing in cause No. 72138. It did not, however, find in appellant's favor on her petition, but held against her and dismissed her petition. If the court erred in finding against appellant and its ruling is permitted to stand, appellant will be deprived of a right of which she ought not to be deprived, but it by no means follows that she will have been deprived of her rights to due process of law. Rather she will be deprived of her rights by an erroneous judicial decision given after a consideration of evidence adduced at a hearing in which she fully participated, and after having requested a decision upon that evidence. It is a rule established by the decisions that a constitutional question in order to deprive this court of jurisdiction on the ground that a constitutional question is involved must be substantial and not merely colorable. McManus v. Burrows, et al., 280 Mo. 327, 217 S.W. 512. In Supreme Lodge of World, Loyal Order of Moose v. Paramount Progressive Order of Moose, 322 Mo. 866, 17 S.W.2d 327, it was held that where a litigant invokes a constitutional provision in determining jurisdiction on appeal, the court will look beyond the claim of a party, and determine from an examination of the record whether there is any substance in such claim. See also Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685, 113 S.W. 1108. The raising of a constitutional question must really exist, and if it does not exist, it is not raised. Huckshold v. United Rys. Co. of St. Louis, 285 Mo. 497, 226 S.W. 852; Berberet v. Electric Park Amusement Co., 310 Mo.

655, 276 S.W. 36; Brookline Canning & Packing Co. v. Evans, 238 Mo. 599, 142 S.W. 319.

 In this case the record plainly bespeaks due process of law, in that there was a full hearing, and evidence pertinent to the question presented by appellant's petition for adoption was introduced and considered by the court. The real questions in the case do not involve a construction of either the State or Federal Constitution, but concern nothing beyond the exercise of judicial power within the limits thereof. Robinson v. Nick, 345 Mo. 305, 134 S.W.2d 112; Royle Mining Co. v. Fidelity & Casualty Co. of N. Y., 161 Mo.App. 185, 142 S.W. 438. The asserted constitutional question has no substance, but is merely a colorable and sham issue injected into the case in an attempt to deprive this court of jurisdiction. This is not permissible. City of St. Louis v. Fitch, 353 Mo. 706, 183 S.W.2d 828. Consequently the appeal is within our jurisdiction and, upon such basis, we shall proceed to dispose of the case on its merits.

It is urged that the court erred in restricting and limiting appellant's status in this case to merely that of an "informant" instead of that of an "interested person" and a "proper party" with the right to intervene and be heard as such, and to fully participate in the matters being tried.

As heretofore stated, at the time the cause first came on for hearing on October 20, 1961, appellant's counsel appeared on behalf of appellant, and secured a continuance of the case until October 26, 1961, in order that he might investigate the case. On the latter date he filed an entry of appearance as attorney "for Daisy French, the grandmother," to which the court added "and an informant to the court."

 No objection was interposed at the time to the court's action and no request made that appellant be designated other than "grandmother." Just what the status of a grandmother is in a law suit does not appear in appellant's brief, nor for that matter, do the rights and duties of an "informant." But, be that as it may, appellant fully participated in the case by cross-examining petitioner's witnesses, and introducing evidence calculated to destroy petitioner's case and to support her contention that it would be to the best interest of the child to leave him in appellant's custody, and which evidence, it was later claimed required a finding for appellant on her petition for adoption. Appellant throughout the trial was treated as an interested and proper party to the cause. Such being the case the complaint that she was designated as an "informant" is of no consequence. If the court's action was error, it did not materially affect the merits of the action. Under such circumstances we are not authorized to reverse. Civil Rule 83.13(b).

 It is next urged that the trial court erroneously refused *at the hearing* to enter an order consolidating her petition for adoption with the petition for transfer of custody filed by Barbara French, the mother of the child, whose custody and adoption was involved. Here again we find no prejudicial error of which appellant may complain. She was permitted to fully participate in the proceedings on trial, and actually offer evidence, at the time, which she alleged was applicable to the adoption case, and on which she claims she was entitled to a decision in her favor in said cause. It is impossible to conceive how a different result would have been obtained had the order of consolidation been made earlier than it was. See Civil Rule 83.13 (b).

Appellant's next assignment of error reads as follows:

> "The Trial Court erred in holding that the written consent executed by the mother of the child was legally valid and binding, inasmuch as the greater weight of the credible evidence, both medical and lay, established that the consent was not given freely, openly,

and voluntarily, and while the mother was in full possession of her faculties, but quite to the contrary".

It would appear that what appellant has in mind in the above assignment of error is, the "Waiver of Necessity of Consent to the Future Adoption of the Child" which was executed by Barbara and acknowledged before a notary public on October 16, 1961, and which was attached to her petition filed in court, October 18, 1961. The court in its judgment in addition to ordering the custody of the child transferred to Children's Services, further ordered "that said Barbara French be and she is hereby granted permission to waive the necessity of her consent to a future adoption of said minor child, and, further, the court hereby approves the waiver of such necessity" executed by said Barbara French, dated October 16, 1961.

It is doubtful that appellant may raise the points specified. It would seem that the right to revoke or set aside the "Waiver of the Necessity of Consent to a future Adoption" for the reasons stated is a personal one which may only be exercised by the person executing same with leave of court at a hearing, notice of which has been given to all interested parties. Sec. 453.050 RSMo 1959, V.A.M.S. Barbara French did not ask the court to set aside said instrument. However, we will assume, without deciding, that appellant may urge the matters now complained of, and decide the matter on the evidence presented.

One of the points urged in support of said assignment is that the instrument in question was revoked when Barbara made certain statements in the office of appellant's attorney. This episode occurred eleven days after the waiver had been executed, at which time she was accompanied to said office by appellant and another. The attorney had arranged beforehand to have a shorthand reporter present to record everything said by Barbara and himself at the interview. After Barbara arrived the attorney called Mr. O'Toole, the

guardian ad litem, on the telephone and advised him he had Barbara in his office, and invited him to sit in on the interview. Mr. O'Toole was not present during the questioning of Barbara at that time. Barbara, at the trial, in answer to leading questions put to her by appellant's counsel, admitted: that appellant's attorney told her she did not have to talk if she did not want to; that he told her that if he took a statement she was acting on her own free will; that she was frightened but that the attorney did not do anything that caused her fear; that she gave a statement to him; that she remembered she answered "yes" to the question, "Now, Barbara, did you come up here to my office of your own free will?"; that she answered, "Yes" to the question, "You understand any statement you make now might be used later on in a court proceeding at your son's transfer of custody * * * do you understand that?"; that she answered "no" to the question, "was there anybody there other than the three of us in that room at that time?"; that she answered "Yes" to question "Do you feel that there has been love between the child and the grandmother?"; that she recalled she answered "No" to the question, "Do you feel the child has been neglected in any way by your mother?"; that she recalled she answered "Yes", when questioned if she understood she had given a transfer of custody of the child to Family and Children's Services; that she recalled that, when asked what were her desires then, she answered, "Well, to give mother legal custody * * * under the circumstances"; that when asked what circumstances, she recalled she replied, "Well, that it can be, you know, quiet"; that she recalled that she answered "yes" when asked " * * * You don't want anybody to know about this proceeding, is that what you mean?"; that she recalled her answer was "yes", when asked, "Do you want to revoke the consent that you gave to the Agency?" Continuing, Barbara testified:

"Q. Then I questioned you: 'You want the Juvenile Court to know about

this statement?' You said, 'not unless they have to'

"Q. * * * you mean that they not have knowledge what your desires are?

"A. * * * Yes.

"Q. And if it is to express your desires, then you want them to have this statement?

"A. Yes.

"Q. All right. Would you sign the statement revoking the consent to the agency and giving custody to your mother, Daisy French?

"A. Yes."

When called upon to explain why she gave the statement, Barbara testified, that at the time she was frightened because she had been threatened, and told that she was mentally ill; that she was told that numerous things would happen to her "if I didn't do this. * * * that I would be put in an institution and * * * that I would get into trouble about these other things * * that I would get into trouble; that I would be put—maybe put in jail or prison or something like that." She stated that her mother told her on the phone before she went to the lawyer's office that she would go to jail or prison; appellant told her she would have her put in an institution; appellant said she would probably end up suffering, and that her father, who had recently died, would haunt her, and that she (Barbara) was scared.

Barbara, while on the stand, identified her signature to the petition and the Waiver of Consent to Future Adoption. She stated she had read them and fully understood them. She further testified that she executed the documents freely and voluntarily; that she did not act under duress nor was she motivated by fear of anyone; that she understood the papers were for the purpose of future adoption of the child and placement with Children's Services for that

purpose. She further testified she was not then frightened.

She also testified that she understood that by this proceeding she was giving away all her legal rights to the child, and realized she would never be able to contact the child again. She said she wanted the child to have a mother and father, and a home atmosphere where he would be free from the doubts and fears she had experienced in her home. She also stated she did not feel the child would be happy with the grandmother, and thought that what she was doing, was for the best interests of the child. It also appears from the evidence that she received counsel and guidance in the matter from employees of the Juvenile Court and Children's Services. There was no evidence that these employees in any way exerted any influence on Barbara, nor does appellant in this appeal claim that they did.

She did not execute any written revocation of said waiver. Barbara further testified that she was not asking the court to revoke her consent.

■ Under the evidence it is clear that Barbara French did not revoke the "Waiver of Necessity of Consent to Future Adoption" and the trial court did not err in approving same.

Appellant contends that certain facts which she claims were developed at the trial show that the "Waiver of Consent to Future Adoption" was under the impact of duress and undue influence exerted by Tony Mendoza. Those facts which are set out in appellant's brief, are: "That Barbara lived for a considerable period of time with Mendoza who by his own admission at the trial, could have been the father of another illegitimate child, which she gave up in Fort Worth, Texas, where she was staying at the time of its birth. Mendoza had been "courting" the mother (Barbara) while she was still living with the appellant at her home. He, himself, stayed there awhile. Animosity developed between him and appellant due to appellant's objections to her

daughter's association with him. In addition to their illicit relations with each other, they were associated together businesswise in a ceramics business, in which she worked for him. According to his testimony he had in mind "maybe marrying her sometime".

According to the testimony of both Barbara and Mendoza they were not living together. It appears that Mendoza had been courting Barbara for some time while she was living at appellant's home. He himself stayed there for a while. Animosity did develop between him and appellant due to appellant's objections to her daughter's association with him. After Mendoza left appellant's house he took up residence at 1755 So. 18th Street. Barbara was unhappy when she lived with her mother, and sometime after Mendoza left she also moved to 1755 So. 18th Street. Barbara testified that she and Mendoza were not living together; that they had separate quarters on the same floor of the building. Mendoza also denied that he and Barbara were living together, stating that she had her own quarters and own entrance to it. He also stated that the rooms occupied by him and those occupied by Barbara were separated by French doors. It is true that Barbara gave birth to another illegitimate child, which she gave away. This occurred in Fort Worth, Texas, in July 1961. Mendoza testified that he could not say that he was the father of this child; that before she came to the place she then was, she dated other men, but that the child could have been his. Mendoza testified that he intended to marry Barbara when the problem connected with the child was settled. He further testified that he did not threaten her in any manner to induce her to give up the child for adoption, but that was a decision she herself would have to make under the influence of no one. He further testified that if the child was given to the grandmother it would clear up the problem, if it was decided that hers was the best home; that he would marry her if she herself kept the child, but she would have to know whether she was going to keep it.

It is our view that the evidence failed to show that the instrument in question was executed by Barbara as a result of undue influence exerted by Mendoza, and that a contrary finding would rest on mere speculation and conjecture.

It is next urged that Barbara was not in full possession of her faculties at the time the "Waiver of Consent" was executed, and for that reason the court erred in holding the instrument valid and binding. We take this as an assertion that Barbara was so mentally ill at the time she did not understand the nature and consequences of her act. Appellant places reliance on the testimony of Dr. Dermott Smith in support of this contention.

Dr. Smith, at the time he testified, was Acting Director of Neurology and Psychiatry at St. Louis University. He first saw Barbara on September 30, 1958, at Firman Desloge Hospital. She was referred to him by one of the other Departments of the hospital which could have been the Obstetrical Department, since she had given birth to her child on September 23, 1958. When asked the nature of the referral he stated that the patient complained of episodes of emotional upset, feelings of numbness, symptoms of tension, headaches and feeling needles in her head. He stated that the doctors who examined her found no organic basis for this condition and so referred her to the psychiatric clinic. The doctor then read from his records his impression gained from this interview, which record was as follows: "I felt a basic defect is severe emotional immaturity and instability, and prognosis for good adjustment must be guarded. Patient is not psychotic or neurotic, however, and no treatment at this time is indicated". The doctor, in further explanation of her condition, which he found at that time, testified on cross-examination that the fact she had just recently been delivered of a child was a factor in forming his impression, and one reason why he was so conservative in his diagnosis; that he did not know exactly

how the delivery had affected her; that the emotional impact in a woman 16 years of age, who gives birth to an illegitimate child, is considerably greater than in a woman who delivers a child born in wedlock; that at times many women, otherwise normal prior to delivery, display emotional symptoms subsequent to delivery.

Dr. Smith saw Barbara again in April 1959, at which time she displayed the same symptoms as she had on the first visit, and for that reason he thought she ought to come back and see him on a regular basis. At his suggestion, Barbara did return on May 29, 1959, June 26, 1959 and August 21, 1959. The doctor stated that on this last visit his records were "It has been my increasing impression that should this young woman be subjected to severe constant stress, she might well become Schizophrenic. The last time Dr. Smith saw her was this visit of August 21, 1959. The doctor prescribed a tranquilizer for her condition. He gave it as his opinion she would have continuous difficulties without psychiatric care, or some kind of environmental support. Barbara was living in appellant's home at the time where there was considerable stress and friction between her and her mother.

On cross-examination Dr. Smith testified that not having seen her since August 1959, nor having been apprised of any developments in her, he would hardly be in a position to state what her condition was within the last month or so. There was no medical testimony as to her present condition, or any medical opinion as to whether on October 16, 1961, when she executed the instrument in question, her mental condition was such that she did not understand the nature and consequences of her act in executing the "Waiver of Consent". After hearing this testimony, together with that concerning the stress experienced by her while living in appellant's home and observing Barbara throughout the trial, the trial court found that her mental condition, at the time she executed the waiver, was such that she did understand the nature and consequences of her act. We are in accord with the trial court's views. The trial court did not err in its ruling on this point.

■ It is contended that the Court erred in sustaining Barbara's petition and ordering transfer of custody to Children's Services for the reason that the evidence established that appellant was best suited to have custody of the child. We cannot agree that such is the case. While it is true that the evidence showed that the child was well taken care of by the grandmother, and that there was love and affection existing between the child and his grandmother, there are certain other factors which lead us to believe that the best interests of the child would be served by transferring the custody to Children's Services for the purpose of future adoption by others. Appellant is 45 years old. She is a widow, her husband having died March 30, 1960. The child is three years old. Appellant collected about $5,000.00 insurance upon the death of her husband, of which there was left at the time of the trial about $2800.00. She has no other substantial assets. Appellant's earnings are rather meager. She makes $12.00 a week as a baby sitter at night, and $10.00 per week for cleaning her sister-in-law's house. That is the total of her earnings. However, her mother-in-law gives her $10.00 a week. She lives in a four room house for which she pays $35.00 per month rent. The house is located in a low socio-economic neighborhood in south St. Louis. She was not attending any church at the time of the hearing, but stated she would take the child to church for instructions in the event the court granted her petition. Barbara, the mother of the child, testified she felt it was best for the child to have a mother and father and a home atmosphere. This was the opinion of the Juvenile Officer and social workers who had investigated the case and counseled with Barbara. If the Children's Services is granted custody of the child it will place him in a prospective adoptive parents home.

In view of the foregoing facts and in consideration of all the evidence it is our

judgment that the best interests of the child would not be to leave him with appellant, but with Children's Services who will place him for adoption in the best suitable home. The court did not err in the respects claimed.

It is next urged that the court failed to consider the case in the orderly process of judicial procedure, and thereby denied appellant due process of law, and was an abuse of power. What we have heretofore said in our judgment is sufficient to dispose of this point adversely to appellant.

Finding no reversible error in the record, each of the judgments of the Juvenile Court, on appeal before us, is affirmed.

WOLFE, Acting P. J., and JACK P. PRITCHARD, Special Judge, concur.

RUDDY, P. J., not participating.