**In the Matter of M. D. H., a minor.**

**No. 11129.**

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 25, 1980.

W. H. Thomas, Jr., Routh, Thomas, Birdsong & Hutton, Rolla, for petitioners-respondents.

Gene Gulinson, Curtis W. Carle, Salem, for petitioners-appellants.

MAUS, Judge.

In this case, while the trial court could have denied an adoption by either of the parties, essentially the trial court was called upon to determine whether a female child should be adopted by her foster parents (Respondents) or by her paternal grandmother and step-grandfather (Appellants). The trial court chose the foster parents. By their appeal the appellants ask this court to declare that the trial court made the wrong

choice. The circumstances and proceedings by which this question has been posed are as follows.

The child was born December 14, 1974. On January 9, 1975, on the basis of parental neglect she was made a ward of the court and placed in the custody of the Division of Family Services. After a few days in another foster home, on January 23, 1975, when the child was 40 days old, she was placed in the custody of the respondents who had approval for a Child Care Home. It should be noted that other than a boy for a previous weekend, this child was the only child that had been placed with the respondents. The child continuously lived with the respondents from the date of placement to the date of trial. On September 27, 1975, the father of this child died. On November 29, 1976, the mother executed a Waiver of Consent to Future Adoption and Consent to Termination of Parental Rights. On December 2, 1976, the respondents filed their Petition for Transfer of Custody and for Adoption. On January 20, 1977, the court terminated the parental rights of the mother and transferred custody to the respondents.

In October or November, 1976, the appellants consulted an attorney with a view to adopting the child. Certain efforts and inquiries were made to that end. The appellants were not aware of the mother's waiver and consent until a few days before March 13, 1977, when they filed their Petition for Transfer of Custody and Adoption. From a recital in the final decree it appears the two cases were, upon the agreement of the parties, consolidated by an order of the court. Trial was had on June 26, 1978, upon Count II of respondents' petition seeking a decree of adoption and upon Count I of the appellants' petition seeking a transfer of custody with a view to adoption.

The trial and review of these proceedings involve several technical points which have not been raised by the parties. However, attention must be given to these points to determine the jurisdiction of this court and in order that the precedential ramifications of this opinion will not be misconstrued. The first point to be considered is the appellants' right to appeal from the decree. In many instances there is no right of appeal from the denial or grant of an award of custody as such an order is not a final judgment. For example, a father may not appeal from an order transferring custody to a step-father, *Marsch v. Williams*, 575 S.W.2d 897 (Mo. App.1978); a petitioning would be adoptive father cannot appeal from an order removing the child from the custody of the petitioner and his co-petitioner from whom he was separated, *In Interest Beste*, 515 S.W.2d 530 (Mo.1974); and petitioners may not appeal from an order denying custody of one of two children with no mention of the other, *In re Adoption of L.L.V. and S.A.V.*, 457 S.W.2d 2 (Mo.App.1970). *In re Smith*, 331 S.W.2d 169 (Mo.App.1960) denied adoptive petitioners' right of appeal from a denial of custody upon the natural mother's petition (in which adoptive petitioners joined) when no action had been taken upon the petition for adoption. This case is to be distinguished. Here, the hearing was upon the appellants' Petition for Transfer of Custody and Adoption. The transfer of custody was a prerequisite to an adoption. The trial court denied custody and dismissed the petition. That was a final order disposing of all issues raised by that petition and appellants have a right of appeal therefrom.

The right of the appellants to appeal from the order granting the adoption by the respondents is another matter. Only by a recital in the final decree does it appear the actions were consolidated. The power of the court to consolidate the two actions to the extent they become one action, as distinguished from consolidation for trial, is subject to question. See Wright and Miller, Federal Practice & Procedure, Civil § 2382, p. 253; 1 Am.Jur.2d Actions, § 161, p. 672. The extent of the order of consolidation in this case does not appear from the record. Nor does it appear that either appellants or respondents made application to intervene in the action brought by the other. See *In re Duren*, 355 Mo. 1222, 200 S.W.2d 343

(banc 1947); *Thelen v. Ekberg*, 237 Mo.App. 258, 167 S.W.2d 645 (1943); and also *In re J.___ L.___ H.___*, 373 S.W.2d 635 (Mo. App.1963) in which a grandmother participated as "an informant to the court". This opinion should not be construed as implying that the appellants, because of their status as paternal grandmother and step-grandfather or even as competing petitioners, per se, have a right of appeal from the decree granting respondents' prayer for adoption. However, because the matter has been treated as if there had been complete consolidation and cross intervention, the case will be considered upon the issue which the parties have presented: did the trial court err in granting adoption by respondents and dismissing the petition of the appellants?[1]

The evidence on the merits need be only briefly summarized. The respondents had been married for 22 years; they had two grown sons, although one yet lived in a trailer on the family farm; and the husband was 38 and the wife 37 years old at the time of trial. The appellants were married on January 17, 1959; the appellant wife had a prior marriage by which she had three grown children, including the deceased father of the child in question; the appellants had a son 14 and a daughter 10 years old who lived at home at the time of trial; and the husband was 49 and the wife 47 years of age at the time of trial. Each husband was steadily employed. Each wife was not employed outside the home. Each family had an adequate income, although respondent husband earned more than appellant husband. Each family had suitable housing. Each family was well respected and bore a good reputation. The Reynolds County Office of the Division of Family Services (the respondents lived in Reynolds County) that had supervised the custody of the child since she was 11 days old, reported with approval the care given the child and the close relationship between the child and the respondents and recommended adoption

by respondents. The Dent County Office of the Division of Family Services (the appellants lived in Dent County) recommended the transfer of custody to and adoption by appellants. There was evidence of the good care given the child by the respondents and of a strong bond of attachment and affection between the child and the respondents. Additional evidence will be noted where pertinent.

The appellants' first assertion of error is based upon an alleged issue concerning religion. The evidence developed the respondent wife was a member of and pianist for a church and attended regularly. Respondent husband was not a member but frequently attended this church. A former Pastor of this church testified concerning the respondents' participation in the church, the care given the child and the apparent bond of affection between the child and the respondents. On the other hand, the appellants were not members of a church, but attended various churches, occasionally the church attended by the respondents. Asserting there were no other factors to establish the decree to have been in the best interest of the child, the appellants argue that decree was erroneous because it was based upon respondents' affiliation with a specific church and cite *Waites v. Waites*, 567 S.W.2d 326 (Mo. banc 1978). They quote therefrom "[I]t is apparent the court focused on appellant's religious belief per se, rather than on what the best interests of these children required as to custody. We hold that no judicial officer may determine child custody based on approval or disapproval of the beliefs, doctrine, or tenets of the religion of either parent or their interpretation thereof." *Waites*, 567 S.W.2d at 333. This court does not consider that *Waites* proscribes the reception and consideration of evidence of the religious affiliation and activities of a custodian as the same pertains to the best interests of a

---

1. In *State ex rel. Earnest v. Meriwether*, 270 S.W.2d 20 (Mo. banc 1954) competing actions for adoption in the same court were consolidated and it was held the trial court did not err in treating the petitions as one action and upon

being disqualified in one action the judge was disqualified in the other. A later appeal was so considered. *In re Greenwood*, 288 S.W.2d 413 (Mo.App.1956).

child. A contrary view would blind the court to what is obviously one of the most important aspects of the child's prospective life. The trial court did not focus upon a religious belief, per se. Certainly *Waites* cannot be considered as authority for the proposition the trial court erred in not making a choice in favor of those who less frequently attended church. There is no basis for the assertion the trial court acted contrary to *Waites.*

No findings of fact were requested or made. There is a presumption the trial court acted upon a permissible basis. *Matter of B.J.K.*, 573 S.W.2d 382 (Mo.App.1978).

■ Contrary to the appellants' assertion, there were other factors to be considered as a basis for the choice. An important factor was the comparative ages of the petitioners. *Matter of B.J.K.*, supra; *In re Greenwood*, 288 S.W.2d 413 (Mo.App.1956). The blood relationship relied upon by the appellants to tip the scales in their favor is but one factor, which does not necessarily preponderate in their favor. The trial court could well have considered the possible difficulty of the child in adjusting to a home to be shared with two children ages 14 and 10 who were her uncle and aunt. *Matter of B.J.K.*, supra. Of crucial importance is the period of three years and five months during which the child lived in the home of and was cared for by respondents. It was uncontroverted that the child had received excellent care and training and there was a strong bond of attachment and affection between the child and the respondents. It was also established that a disruption of that relationship would be an emotional trauma to the child and that her future adjustment in the home of appellants was uncertain. While a period of custodial care is not always controlling, *In re Greenwood*, supra, even in the absence of statute, in the circumstances of this case this period of custodial care is of overriding significance. *In re Mayernik*, 292 S.W.2d 562 (Mo.1956). This significance is reinforced by § 453.-070(3), RSMo, which directs a child placing agency to give preference for placement for adoption to foster parents who have cared

for a child for eighteen months or more. The appellants' contention that the trial court erred by not affording proper significance to the blood relationship and by failing to award the grandparents visitation, citing § 452.400(3) and § 452.402, is without merit. Those sections are applicable to dissolutions of marriages. Recognizing the fundamental differences concerning custody upon the dissolution of a marriage and an adoption, the assertion that the legislative intent expressed in those sections is applicable to adoptions is rejected. The trial court did not erroneously declare or apply the law, there was substantial evidence to support its decree and it is not against the weight of the evidence. The judgment of the trial court is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

BILLINGS, P. J., and GREENE and PREWITT, JJ., concur.