STATE OF MISSOURI at the Relation of ST. LOUIS CHILDREN'S AID SO- CIETY, a Corporation, Relator, v. HON. WILLIAM C. HUGHES, HON. EDWARD J. McCULLEN, and HON. LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 38722.—177 S. W. (2d) 474.

Division One, February 7, 1944.

*Byron F. Babbitt, Wm. H. Allen* and *Mark D. Eagleton* for relator.

*David E. Horn* and *Alfred L. Grattendick* for respondents.

CLARK, P. J.—Original proceeding in certiorari against the judges of the St. Louis Court of Appeals, respondents, whereby relator seeks to quash the opinion of that court in the case of In re Schoenfeld, 171 S. W. (2d) 764, for alleged conflict with our opinion in the case of Child Saving Institute v. Knobel, 327 Mo. 609, 37 S. W. (2d) 920.

So far as material here, the facts set forth in the opinion of the court of appeals show that Maribelle Schoenfeld is a female child born out of lawful wedlock in St. Louis county on May 4, 1941. Her mother is Mary Schoenfeld. On May 16, 1941, with the mother in court, the juvenile division of the St. Louis county circuit court had a hearing, made the child a ward of the court, granted custody to relator, St. Louis Children's Aid Society, made an allowance of $20.00 per month for the child's maintenance and ordered the mother to contribute as able. On May 21, 1941, the child was placed in the home of Rudolph and Clera Wettig, husband and wife, under an agreement that the Aid Society would pay the Wettigs $20.00 per month for the child's board. Soon thereafter the Wettigs formed a desire to adopt the child and attempted without success to secure the consent of the Aid Society to such adoption. On December 5, 1941, the Wettigs and their attorney procured consent from the mother for adoption of the child by the Wettigs. On January 6, 1942, the Wettigs filed their petition for adoption in the juvenile division of the circuit court. The court appointed a guardian ad litem who investi-

gated and made a report which was not unfavorable to the Wettigs and which did not oppose their adoption of the child, but stated that on October 31, 1941, the mother had relinquished the child to the Aid Society. On July 3, 1942, after a trial, the juvenile court denied the petition of the Wettigs for adoption. On appeal the court of appeals reversed and remanded the case with directions to decree the adoption.

The opinion recites the evidence as to the financial ability and moral fitness of the Wettigs, construes our statutes relating to the custody and adoption of children, holds that the relinquishment of the child by the mother to the Aid Society was not irrevocable, says that under the facts the welfare of the child, which is of chief concern, will be best subserved by permitting her adoption by the petitioners and contains this language:

"On what principle of justice or fair dealing should the mother be deprived of her statutory right to give or withhold her consent to the adoption of her child and to have such right given effect by the juvenile court? We can find none either upon reason or authority. Nor do we think our statute relating to neglected and delinquent children intends to deprive the mother of that right."

We understand the opinion to hold that upon proof that petitioners possess sufficient financial ability and moral fitness, and have the consent of the parent, no further proof as to the best interests or welfare of the child is necessary; also, that proof of the financial ability and moral fitness of the petitioners being established, adoption *must* be decreed in accordance with the parent's direction.

Our construction of the opinion is confirmed by the brief filed in this court on behalf of respondents wherein it is stated:

"In an adoption proceeding, where the parent consents to the adoption by the petitioners, the test is the fitness or not of the petitioners to become the adoptive parents of the child. If such fitness is shown, the Court must respect the selection made by the parent of the child. It is not in such case for the Court to inquire whether or not the institution to which the parent has committed the custody of the child is properly caring for the child, nor to inquire as to whether or not the institution has plans for the adoption of the child by persons with larger financial resources. But, if such matters were to be regarded as determinative in the adoption proceedings, surely the institution, and not the petitioners, would naturally be expected ▮ to bring such matters to the attention of the trial court in the adoption proceedings, and not having done so, the presumption is that there are no existing conditions or plans that would better subserve the welfare of the child."

In Child Saving Institute v. Knobel, supra, the facts were as follows: The parents of Alice Louise Pollard, an infant, lived in Nebraska. The mother died and the father, in accordance with the Nebraska statutes, gave custody of the child to the Institute with power to it to consent

to adoption. The Institute let the Knobels, who resided in Nodaway County, Missouri, have the child on trial. Later the Knobels filed their petition in the Nodaway county circuit court alleging that the child had been abandoned by her parent for more than two years and asking a decree of adoption. The circuit court, without notice to the Institute, heard evidence as to the moral character and financial circumstances of the petitioners and awarded them a decree of adoption. The Institute brought a proceeding in habeas corpus in the Kansas City Court of Appeals and the case was transferred to and decided by this court, en banc. We said, in effect, that the Institute had the legal custody of the child at the time the Knobels took her and still had the right to custody unless the same was cut off by the decree of adoption. Then we held the decree invalid for want of notice to the Institute and for the further reason that there was no substantial evidence that it would be for the best interest of the child to permit the Knobels to adopt her. We said, that while under the evidence the financial ability of the Knobels to support the child and their moral fitness to be entrusted with her care and custody were unquestioned, there was no substantial evidence that the Institute was not supporting and maintaining the child and furnishing her proper moral and intellectual training.

In the case now under review the Aid Society had the legal custody of the Schoenfeld girl at the date of the hearing of the petition of the Wettigs to adopt her. Such custody had been awarded to the Aid Society by the juvenile court under Article 9, of Chapter 56, particularly Sections 9673 and 9689, Revised Statutes Missouri 1939. [Mo. R. S. A., vol. 20, pp. 357, 390.] The opinion of the court of appeals makes no reference to any evidence as to the kind of treatment and training the child was receiving from the Aid Society nor as to the plans, if any, of the Aid Society for the permanent custody of the child. The holding of the court of appeals that without such evidence a decree of adoption could be rendered is in clear conflict with our holding in the Knobel case.

Nor was such evidence made unnecessary by the consent of the mother to the adoption. Section 9609, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 20, p. 299] provides: "The court shall not decree the adoption, except as hereinafter provided, unless . . . the parents or surviving parent . . . consent in writing, to the adoption; *and the approval of the court shall be requisite in all cases, such approval being given or withheld as the welfare of the child or person sought to be adopted may, in the opinion of the* court, demand. . . . " The word "requisite" has a very positive meaning, to wit, "indispensable." So, under the plain terms of that section, even when the consent of the parent is required and is obtained, the approval of the court is also indispensable and shall be given or withheld according to the court's judgment as to the welfare of the child.

In other words, although in this' case the parent's consent was necessary to adoption because she had not abandoned the child for a period of two years, the approval of the court was also necessary.

Section 9613, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 20, p. 308] provides: "If the court, after due hearing, is satisfied that the person or persons petitioning to adopt such child is of good character, and of sufficient ability to properly care for, maintain and educate said child, *and that the welfare of said child would be promoted by sustaining the petition for adoption, and that it is fit and proper that such adoption should be made, a decree shall be made* . . . ."

Of course, proof of the moral character and ability of the petitioners is required, but that is not the end of the matter. The welfare of the child may be affected by many other considerations, such as the age, intelligence, health and temperament of the petitioners, the age, sex, health, temperament and other qualitites of the child. [39 Am. Jur., pp. 607-614, secs. 20-21.] The juvenile court has a wide discretion in determining the fitness of the petitioners, which discretion, of course, must not be arbitrarily exercised.

Then, too, the duty of the court is not only to provide a *good* home for the child, but to provide the *best* home that is available. By that is not meant the wealthiest home, but the home which, all things considered, is available and the court deems will best promote the welfare of the particular child. The opinion of the court of appeals does not make it clear as to whether there is any other plan in prospect for the child's custody. That is a matter which should not rest on presumption. If there has been no investigation of the plans which the Aid Society may have for the permanent custody of the child, the juvenile court should make such investigation and would have to do so before it could decree adoption. In this case the juvenile court *refused* to decree adoption. Whether it did so because it deemed the Wettigs unfit or because a better plan was available is not clear. In such a state of the record there was not such substantial evidence of the best interest of the child as to authorize either the juvenile court or an appellate court on a trial de novo to enter a decree of adoption. In holding the contrary the opinion of the court of appeals is in conflict with our opinion in Child Saving Institute v. Knobel, 327 Mo. 609, 37 S. W. (2d) 920.

Accordingly, the opinion of the court of appeals is hereby quashed. All concur.