In the matter of the ADOPTION OF ANN, An Infant, by James E. and Gazell ————, Husband and Wife.

No. 25436.

Kansas City Court of Appeals, Missouri.

Dec. 7, 1970.

James J. Wheeler, Keytesville, for petitioners-appellants.

Albert Smith, Juvenile Officer, Moberly, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal from an order dated January 6, 1970, denying a request for the transfer of custody of a minor child in an adoption proceeding. The petition filed by James E. and Gazell ———— on June 27, 1969, sought the adoption of Ann ————, an infant born out of wedlock. The natural mother gave written consent.

On June 27, 1969, the court directed the Randolph County Welfare Office to make

an Investigation and Report. This order was made pursuant to Sect. 453.070 V.A. M.S. which provides that no decree for adoption of a minor child shall be entered nor shall transfer of such child be ordered by the juvenile court having jurisdiction until a full investigation has been made of the physical and mental conditions and antecedents of such child for the purpose of ascertaining whether the child is suitable for adoption and the suitability of the petitioner or petitioners as parents for the child, and the results of such examination shall be embodied in a written report that shall be submitted to the Court. The requirement of this statute is mandatory. In re G———, Mo.App., 389 S.W.2d 63.

Pursuant to the order of the Court the Randolph County Welfare Office filed with the Court on October 28, 1969, a report of its investigation.

This report discloses that James E. ——————— was born May 8, 1910, and his wife, Gazell, on September 14, 1910; that Ann ————— was placed in their home on January 15, 1969, for foster care.

The report further recites the following: "The G's home had been approved for foster care of children and Paul ————— has lived in their home since June 7, 1965. The G's had expressed their desire to care for a baby for our agency, so Ann was placed in their home. The G's have become very fond of the baby and talked to the worker about adoption if the baby became legally free. Worker discouraged this plan since Mr. and Mrs. G———— are 59 years old. Mr. G————— contacted Marion Lamb, local attorney, in regard to the adoption. Mr. Lamb telephoned our office asking if there would be reasons for the G's not being approved for adoption and he was told that the age limit was far beyond the maximum for the placement of an infant for adoption.

"Mr. G———— completed the 8th grade, he worked for farmers and did various jobs until he obtained work with the Wabash Railroad Company, in 1941, as a machine operator. He continues to work for the railroad, which is the Norfolk & Western. He is away from home quite a bit of the time and in the past few months has been working at Loganport, Indiana, so Mrs. G————, the baby and Paul, some weekends meet him halfway and spend the weekend together. There is a possibility that he will be going to Decatur. Mr. G————— is a foreman over a rail gang at the present time and his monthly earnings will average approximately $1000.

"Mrs. G's mother passed away in 1964 and Mrs. G————— had given her a lot of care and felt so lonesome that she thought she would like to have a foster child. It was at this time that Mr. and Mrs. G————— made application for foster care. Mrs. G————— completed the 8th grade and has not been employed since her marriage to Mr. G————, but prior to that time she was employed as a waitress and did cleaning for various people.

"Mr. and Mrs. G————— have both been married previously." Both marriages ended by divorce. "Mr. and Mrs. G————— were married July 2, 1954. They had known each other for a number of years and both had unsuccessful marriages and show appreciation for their present stable marriage.

"Mr. and Mrs. G————— said they had no problems with their children but they realize at the present time, it is more difficult to rear a child. In observing Mr. and Mrs. G's reaction and their disciplining the older foster child, Paul, we feel that at times they have used good judgment and at other times should have given more thought to the problem. This has been particularly true in cooperating with the school, as the foster boy presented problems and Mrs. G————— would discuss before the child, her feelings that the teachers were being unfair. Paul has been

well behaved in their home and they have given him a feeling of security and love. They are the type of people that can show love for a child. At the same time we have found that they do condemn the child's parents and as they become older, we have the feeling that they would probably paint a very bad picture of the mother of the child.

"References included a minister, a neighbor, and a friend of the family. All felt that Mr. and Mrs. G——————— would give much love to a child and they felt that a child would be happy in the home. Mr. and Mrs. G—————— are members of the Baptist Church.

"Physicals given Mr. and Mrs. G—————— on 10–17–69 verified that both were in good physical health. Mr. G—————— was disqualified from the railroad because of black-out spells and was off from work for three years, but returned to the railroad in June 1964. One year of the three year period when Mr. G—————— was disqualified, he worked in Denver, Colorado, as a janitor.

"We feel that this couple will give much love and a feeling of security to a child. They have been good parents to their own children by previous marriages and will make every effort to do the same for the adopted child. We feel that their social activities with the child will be limited because of their ages, which will also limit their participation in school activities when the child becomes school age. The petitioners' ages are far beyond the maximum age for which our agency would feel appropriate for the placement of an infant child.

"We feel that we need to consider life expectancy and future earning ability. By the time the child reaches school age, Mr. G—————— would be eligible for retirement, therefore, his income would be greatly reduced and it might become difficult for the family to meet financial obliga-tions, additional expenses and perhaps medical expenses.

"The petitioners have been very kind to the baby's mother and permitted her to visit in the home. This could be quite a problem in the future, when the mother returns from the State Training School at Chillicothe, and wants to continue to visit her child. The G's do not feel that they would want the mother and probably some of her friends visiting in their home, as they would not want Ann to remember her mother and her associates."

Petitioners say in their brief while they "do not agree with all of the conclusions and opinions expressed in the summary of the Randolph County Welfare Office, they do not question any of the facts set out." They also state in their brief: "The attorney for petitioners was present when the order was made January 6, 1970, and the Court in discussing the matter, indicated his only reason for denying the transfer of custody was the. age of the petitioners." While we, of course, do not question the correctness of the latter statement, there is nothing in the transcript, which we must look to, to bear it out.

Petitioners' contention is that the court erred in refusing to transfer custody of the minor child to them "without a hearing, and solely because of the age of petitioners."

As is to be seen, the investigation of the Randolph County Welfare Office was very thorough and its Report to the Court fully recites the facts. And, as we have pointed out, their brief says "they do not question any of the facts set out" in the Report. Petitioners did not request the court to hear additional evidence. In the absence of such request they are in no position to complain.

In the case of Brooks v. Division of Childrens' Services, Mo.App., 411 S.W.2d

276, it was said: "Reviewing court indulges in the presumption that decision of the trial judge in adoption or custody proceeding was motivated by what he believed was best for the child."

And in the case of State ex rel. St. Louis Childrens' Aid Soc. v. Hughes, 352 Mo. 384, 177 S.W.2d 474, it was said: "The juvenile court has a wide discretion in determining the fitness of the petitioners, which discretion, of course, must not be arbitrarily exercised." The same language appears in the case of In re Neusche, Mo. App., 398 S.W.2d 453, 457.

In 2 Am.Jur.2nd, Sect. 62, page 911, it is said: "The relative age of the prospective adopting parent and the child is one of the factors in determining whether to grant or deny an application for adoption."

In 52 A.L.R.(2) at pages 827–830 are set forth a number of cases wherein the petition for adoption of a young child has been filed by a person or persons of advanced age the courts found that the best interest of the child would not be promoted by allowing the adoption.

In the case of In re Adoption of K, Mo.App., 417 S.W.2d 702, 712, the Springfield Court of Appeals said: "We have several times expressed the view that young children should, when possible, be cared for by individuals who are in good health and of such age as those who normally bear children."

The trial court did not abuse its discretion, and your Special Commissioner recommends that the order be affirmed.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the order is affirmed.

All concur.