**In the Matter of B. J. K. and F. K., Petitioners-Appellants.**

No. 39990.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 12, 1978.

Motion for Rehearing and/or Transfer
Denied Nov. 15, 1978.
Application to Transfer Denied
Dec. 18,1978.

Deborah H. Weinstein, Clayton, for petitioners-appellants.

Barksdale, Adams & Chorlins, Bradford L. Stevens, Clayton, for respondent.

CLEMENS, Presiding Judge.

Petitioning maternal grandparents appeal from denial of their petition for transfer of custody and adoption. We affirm.

In August, 1977 petitioners filed a two-count petition seeking transfer of custody and adoption of their twin five-year old maternal grandchildren. Incorporated by reference were certified copies of the court's prior orders terminating the parental rights of the children's father and their mother, petitioners' daughter, now divorced from the father.

In July, 1977 the court had found the father and mother had wilfully neglected the twins for one year, terminated parental rights, and ordered custody transferred to an agency "for foster care and placement in the best available adoptive home."

In December, 1977 a hearing was held on the petitioners' motion to transfer custody. Evidence showed the children had been placed in foster care in October, 1975 by their mother. She had acted on the advice of her psychiatrist, who recommended foster care for the children's safety. At the mother's request the agency allowed petitioners to visit their grandchildren at the foster parents' home. When the parental rights were terminated the following year these visits were discontinued.

Further evidence on petitioners' motion for custody showed: They have been married 32 years. In addition to their 31-year-old daughter they have a 26-year-old married son. The grandmother is 54 years old, has an eighth-grade education, and earns $250 a week as an office supervisor; she was eligible for retirement in eighteen months. She had a two-week annual vacation which she would take if the children were placed with her and the grandfather. She had obtained the names of prospective baby sitters available to care for the children. The grandfather is 57 years old, has a tenth-grade education and earns $327 weekly as a warehouseman. He has family medical insurance. Both petitioners have recently had physical examinations and are in good health. They actively enjoy bowling, dancing, camping and fishing. The testimony and favorable home investigation study of a social worker was in evidence.

Evidence was introduced by the director and a caseworker of the agency which for two years had supervised the children's foster home. It was their opinion the children were emotionally ready for adoption and that other suitable adoptive family homes were available. The court opined that the children's best interests would be served by placement in an adoptive home other than that of the petitioners.

At the conclusion of the hearing, the court found it was "not in the best interests of [the children] that the petitioners be granted custody for the purpose of adoption," and continued in effect its 1977 order of custody.

Petitioners contend on appeal the court's finding that transfer of custody to them was not in the best interests of the children was not supported by substantial evidence.

■■■ The trial court had to decide what was in the children's best interests and in this crucial decision it had a broad discretion. *In Re Neusche,* 398 S.W.2d 453 [4] (Mo.App.1965). We indulge in the presumption that in an adoption proceeding the lower court's decision was motivated by what it believed was best for the children. *In The Adoption of Ann,* 461 S.W.2d 338 [1, 2] (Mo.App.1970). The judge of a juvenile court has an advantage over this court because he can assess the demeanor and character of parties, traits not discernible to us from a printed record. Because of the lower court's superior vantage point, a reviewing court grants greater deference to his determination when the custody of minor children is involved than in other cases. *In Re Neusche, supra.* We have reviewed the evidence and find the court's decision was supported by the evidence.

■■■ While the evidence establishes that petitioners could give the children a good home, the court's duty is to provide the best available home. The mere fact petitioners were financially able, morally fit, physically capable, and able to furnish a

home for the children "is not the end of the matter." *State ex rel. St. Louis Children's Aid Soc. v. Hughes,* 352 Mo. 384, 177 S.W.2d 474 [5, 6] (1944); *In Re Neusche, supra,* at 458.

█ The lower court expressed concern about the relationship between the petitioners and their daughter and about possible confrontation between her and the children. The grandfather testified the daughter did not frequently visit petitioners and their relationship was not close, but he admitted she was still part of their family and would "get what she asked" from petitioners. His statements pinpoint the realities. Petitioners are not estranged from their daughter. At the time of the hearing she was seeking to regain custody of an older child. Because the termination of the mother's parental rights was involuntary and occurred during a period of her emotional upheaval, it is not unlikely that she may seek contact with the twins or to regain their custody at a time when she believes stability has returned to her life. "The future welfare of the children is extremely important," *Brooks v. Division of Children's Services,* 411 S.W.2d 276 [1–5] (Mo.App.1967), and the likelihood of confrontation between the mother and the children is not mere speculation. The court must "peer into the future, to make a projection based upon the facts then before it." See *In Re K. W. S.,* 370 S.W.2d 698 [6] (Mo.App.1963) where the petitioners seeking to adopt merely knew identities of natural parents and paternal grandparents. Here, the evidence justifies the lower court's concern about prospective confrontation.

Another problem here appears from the testimony of two social workers. One stated the children would accept anyone with whom they were placed as their mother and father. One testified the twins continually asked who their mother and father were and, at one time, the children considered anyone with whom they stayed as mother and father. Here, the problem of role identity is acute. The twins respond to petitioners as grandchildren do to grandparents. By the legal device of adoption, petitioners would become their parents. It is difficult to imagine that children nearly six years old would understand the role change of petitioners from grandparents to parents. A further complication arises from the looming shadow of their mother contacting them. The confusion that might result for the children as to the petitioners' dual role as grandparents and parents was noted in *In Re D___,* 408 S.W.2d 361 [7, 8] (Mo.App.1966).

Finally, our courts have repeatedly said that "young children should, when possible, be cared for by individuals who are in good health and of such age as those who normally bear children." *In The Adoption of Ann, supra,* citing *In Re Adoption of K,* 417 S.W.2d 702 [16, 17] (Mo.App.1967). While petitioners' middle-age does not automatically disqualify them, the court could well consider the effect of petitioners' ages on their ability to provide the best home for the twins during the remaining years of their infancy. We conclude the trial court did not err.

█ As their second point, petitioners challenge denial of a new trial based on newly discovered evidence, an affidavit by petitioners' counsel showing the twins' satisfactory school performance. The grant of a new trial on the basis of newly discovered evidence under V.A.M.R. 78.01 rests largely in the sound discretion of the trial court. The "new evidence" is not so material that it would likely produce a different result. The court did not abuse its discretion in denying a new trial.

Judgment affirmed.

SMITH, J., concurs.

McMILLIAN, J., dissents in separate opinion.

McMILLIAN, Judge, dissenting.

I respectfully dissent because I believe the trial court's denial of appellants' petition for the transfer of custody and adoption is against the weight of the evidence.

The major considerations identified by the majority as reasons for affirming the decision of the trial court are: the relationship of appellants with the twin's mother,

the children's confusion as to whom their parents are, and the age of appellants. While these circumstances mitigate somewhat against appellants, I do not believe they outweigh those many characteristics which render appellants well-qualified to adopt the twins.

The first concern expressed by the majority as a reason to deny appellants' petition was the possibility of a confrontation between their daughter, S———— and the twins. While such a confrontation is always possible, it does not seem equitable to deny appellants' petition on this basis. Appellants do not see their daughter regularly. Since S———— was initially married, she has visited appellants for a weekend at the longest. Since she moved to Arkansas where she presently resides, S———— has seen appellants only when she was in town for judicial proceedings. At these times appellants made special arrangements to meet S———— so as to avoid a meeting between her and the twins. There is no reason to believe appellants would not continue this conscientious practice. Furthermore, it seems inequitable to assume that the risk that S———— will see the children again is unique to appellants. If S———— is determined to maintain contact with the children, it is not unlikely that she will attempt to do so, wherever the children are placed for adoption.

The majority also expressed concern that because her parental rights had been terminated involuntarily, S———— may try to set aside the termination and seek custody of the children, a process which would be facilitated if the children are placed with her parents. This speculation ignores, however, the evidence before the court of appellants' concern for the children as compared with their fairly distant relationship with S————. It also ignores their intention, as demonstrated by past behavior, to prevent S———— from infringing upon the stable home they will provide for the twins.

The second consideration the majority believed determinative was the twin's confusion, as interpreted by the social workers, as to whom their parents were. The majority argues that it would only compound their confusion to legally transform the petition-ers' role from that of grandparents to parents. I cannot agree that this is a reason to deny appellants' petition. First, it is not equitable to place the full burden of the children's confusion on appellants. Any family which adopts the twins would have to deal with this problem. Secondly, placing the children with yet another family, where they no longer see appellants who have visited them, kept them for weekends, and sent them presents and correspondence for the past two and one-half years, practically all of their five year-old memory, is just as confusing.

The last major consideration which the majority identified as supporting the trial court's decision was the age of the petitioners. The majority reasons that the trial court's conclusion could well have been influenced by the effect of the petitioners' ages or their ability to provide the best home for the twins in "the remaining years of their infancy." While this would be a problem for most middle-aged couples, the record reveals that the K————s are not a "normal" couple. They fully intend to encourage the twins to go to college, just as they encouraged their son, and they will receive pension payments of sufficient size to raise the children through teenage and college years. Appellants have just had medical examinations and are in excellent physical condition. As stated by the majority, they lead active lives. And, in the unlikely event that something happens to the appellants, they have already discussed arrangements with their son and his wife, who have agreed to care for the children in such an event.

While I agree with the majority that all of the above factors detract from the petitioners' qualifications as parents, I disagree with the majority that they outweigh the many other factors, as discussed below, which show the petitioners to be excellent candidates for adoptive parents.

In addition to the evidence about the petitioners' health and lifestyle discussed above and in the majority opinion, the record also discloses the following concerning the petitioners' relationship with and concern for the children. When the children were first placed in a foster home, the

petitioners did not seek custody because they were not aware that they could do so until parental rights were terminated and because their mother suggested that the children not be placed with appellants because she (the mother) was capable of physically abusing them should she encounter them. Within one week of the termination of parental rights, however, appellants filed their petition for custody. For the two and one-half years the children were with the foster family appellants brought the twins to their home frequently for weekends and bought them numerous presents such as new bicycles, clothes and toys. At every holiday the petitioners sent the children holiday cards with money inside to take their foster family out to dinner. At the hearing in December, 1977, appellants had already purchased Christmas presents for the children, all the while not knowing the outcome of the lawsuit. Perhaps the ultimate indication of the petitioners' concern is the institution of this suit with its concomitant legal fees and anguish, and their willingness to severely alter their lifestyle to adopt these children.

The petitioners are well-qualified financially to care for the children. They own a three-bedroom home which has a backyard in which the children could play. They have a combined annual income of approximately $28,000 with full medical coverage for the entire family. While Mrs. K―――― presently works, she is scheduled for retirement within ten months. Because the children begin school this fall, they would need to be cared for by a baby-sitter only forty-five minutes per day, before Mrs. K―――― gets home from work. Mrs. K―――― has already advertised in the newspaper for a sitter and has received six applications. A social worker for the State of Illinois investigated this case, paying particular attention to the concerns expressed by the Missouri Division of Family Services, i. e., appellants' age and the potential interference of the natural mother. After her investigation, the social worker gave a very favorable recommendation for appellants to adopt their grandchildren.

Admittedly, there are some countervailing factors to be considered in determining whether the interest of the children is best served by placing them with appellants but I believe the trial court and the majority have overemphasized these factors and ignored the more important, albeit intangible, factors of love and concern which appellants have aptly demonstrated for the children. By the majority's decision, appellants not only lose the opportunity to adopt, but also the chance of ever seeing their grandchildren again. Moreover, there is no evidence before the court as to the qualifications of the alternative adoptive family. To presume without any knowledge whatsoever that the twins will be better cared for by this anonymous family rather than by their grandparents who undoubtedly cherish them, is unfair to appellants, and more importantly, unfair to the children.

For the foregoing reasons, I would reverse and remand and instruct the trial court to enter an order consonant with this opinion.