**In the Interest of D.L.S. III.**

**No. 54906.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 25, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 1989.

Earle B. Leadlove, St. Louis, for appellant.

Vernon R. Dawdy, Lofftus and Dawdy, Fenton, for respondent.

SIMON, Chief Judge.

Appellant, D.S., paternal grandmother, appeals the trial court's judgment denying her petition for custody and adoption of her grandson, D.L.S. III.

Appellant contends that in the absence of substantial evidence the trial court erred in finding that: (1) appellant has exhibited a tendency to act as a link between herself and her son, D.L.S., Jr., natural father whose paternal rights were terminated; (2) appellant has continually demeaned the natural mother of the minor child thereby failing to sever that past link; (3) appellant has failed to show a history of parenting skills which would make her a fit candidate as an adoptive parent; (4) D.L.S. III's exposure to appellant has resulted in behavioral problems. We affirm.

D.L.S. III, age 6 at the date of the hearing, is the natural son of C and D.L.S., Jr. (Father), and has been in foster homes and the Juvenile Court since 1981. In August of 1987 the juvenile court terminated the parental rights of both C. and D.L.S., Jr.

Both parents consented to the termination. However, according to Father, the only reason he agreed to the termination was because he believed his mother, appellant, would be awarded custody of D.L.S. III.

Appellant had filed with the court her petition for custody of the child on March 14, 1986. Subsequent to the termination of the parental rights in 1987, the court held a dispositional hearing concerning the physical and legal custody of D.L.S. III. The court allowed appellant to present evidence and testimony to support her petition.

Appellant testified that she was the paternal grandmother, and she wanted custody of her grandchild, D.L.S. III. She said that from 1981 through 1987 D.L.S. III would visit with Father at her home. Such visitation was pursuant to court order, but the foster parents were frequently uncooperative, and appellant testified that several visits were cancelled at the last minute.

Appellant testified that she was a single mother of two children, including D.L.S., Jr., but that the children had lived with her parents and she visited them on weekends. However, appellant said that if she were awarded custody of D.L.S. III, she would be with him one hundred percent of the time because, due to a lung ailment, she did not work. She claimed that her income from Social Security Disability would be enough to support both herself and D.L.S. III. Appellant stated that she would provide for the child's education, religious training and medical care.

Appellant concluded that it would be in D.L.S. III's best interest to be in her custody, and a 1981 evaluation of her home indicated that it was a proper home for the custody. She testified that her son, Father, did not live with her, and if the court ordered that her son not be there, she would abide by the court order.

Amalou Alfreda Hyman, a friend of appellant, testified that Donald Lee seemed to love his grandmother very much when the social worker was not present, but the child ignored appellant in the presence of the social worker. Ms. Hyman said she saw no reason why appellant would not be a fit person to have custody of D.L.S. III.

Rose Marie Koch and her husband have been the foster parents of D.L.S. III and his two half sisters, Chastity and Rachel, since July of 1987. According to Mrs. Koch, she and her husband have applied to adopt the three children. The record does not indicate the present status of the Koch petition. Mrs. Koch testified that she first met appellant on December 19, 1987, and has not had any contact with her since then. Mrs. Koch said that appellant visited D.L.S. III at her home on December 19, and that it was awful from when appellant first stepped in the door. Mrs. Koch also said that after the visit, D.L.S. III "tore up his toys," "chewed on his fist," and fought with his half-sister, Rachel. Mrs. Koch said that he seemed confused and he cried when she spoke to him. After the visit, Mrs. Koch called Mr. Dickerson, the child's guardian ad litem, and asked that appellant not return because in her opinion, appellant's "mind was not right."

The trial court found that it is not in the best interest of the minor child that he be placed with appellant for purposes of adoptive placement. The court also ordered that all future contacts between the child and his father and grandmother be severed in order to facilitate a complete and unfettered adoptive placement.

In review of this judgment we bear in mind that the trial court has to decide what is in D.L.S.'s best interest and in this crucial decision it has broad discretion. *In re Neusche*, 398 S.W.2d 453, 457[4–6] (Mo. App.1965). *Id.*

In *Ware v. Ware*, 647 S.W.2d 582 (Mo. App.1983), this court stated:

> Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. Further, the appellate court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. Deference is accorded the trial judge even if there is evidence which

might support a different conclusion. (Citations omitted).

*Id.* at 584[1–5].

Further, we shall sustain the trial court's judgment unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

Initially, we note that the trial court's findings of fact were based on evidence adduced by testimony, stipulated reports and relevant recommendations. Appellant contends that the file containing the reports was not placed into evidence, and it is completely improper to speculate what was in the file or to attempt to justify the action taken by the trial court based upon some speculation as to what may have appeared in these documents. We agree that we cannot affirm the trial court's decision based on speculation as to what the reports contained. However, if the record reveals substantial evidence, independent of the reports, supporting the trial court's judgment, we should affirm.

■ In her first point, appellant claims that the trial court's finding that she had a tendency to act as a link between herself and her son was not supported by any evidence in the record, and her own testimony rejects such a finding.

Appellant cites the portion of her testimony where she stated that if the court ordered that her son should not be around, he would not be. Yet, appellant also admitted that her son still called about once a week and visited occasionally. Appellant testified that her son used to visit D.L.S. III in her home. She also said that the only reason that her son gave up his parental rights was because he thought that appellant would receive custody of D.L.S. III. Also, according to testimony from Mrs. Koch, D.L.S. III's foster parent, appellant said that she would do everything she could to get D.L.S. III.

In the case of *In re B.J.K.*, 573 S.W.2d 382, 383[6] (Mo.App.1978), the court held that the likelihood of confrontation between the mother and her children is not

mere speculation, considering that the termination of the mother's parental rights was involuntary and occurred during a period of her emotional upheaval. While the grandfather, petitioner, testified that his daughter, the child's mother, did not frequently visit and their relationship was not close, the court noted that the daughter was not estranged from petitioner, and reasoned that it was not unlikely that she might seek to contact her children or try to regain custody at the time she believes stability has returned to her life.

Similarly, in the instant case, it is not unlikely that Father will try to contact his son, given that he initially resisted the termination of his parental rights, and later consented only because he believed his mother, appellant, would gain custody of D.L.S. III. Further, appellant's motion to amend or correct judgment or in the alternative for a new trial, prays also to set aside the order terminating Father's parental rights, because he consented to the termination believing that his mother, appellant, would receive custody of his son. Therefore, we conclude that the trial court could reasonably infer from all the evidence that appellant would act as a link between her son and D.L.S. III. Point denied.

■ In her second point, appellant claims the trial court erred in finding that she has continually demeaned the natural mother of the minor child, thereby failing to sever the past link which is not in the minor child's best interest. Appellant argues that there is no substantial evidence to support this finding, other than one instance which certainly does not rise to substantial evidence.

Mrs. Koch testified that on the day appellant visited her home, appellant told her and the children of things that had happened in the past with their mother, C., and that many things which had happened were C.'s fault, not her son's fault. According to Mrs. Koch, appellant told the children and Mrs. Koch that C. had tried to cut D.L.S.'s half sister, Chastity's back, and that she tried to kill them and herself.

Then appellant talked about C. sexually abusing D.L.S. III. Mrs. Koch also said that appellant's mind was on telling the children how bad their mother was and how if their mother had changed, things would have been better for her son.

We conclude that Mrs. Koch's testimony was sufficient evidence to support the trial court's finding that appellant has demeaned the natural mother, thus failing to sever the past link which is not in the minor child's best interest. Point denied.

■ In her third point, appellant claims that the court erred in finding that she failed to show a history of parenting skills which would make her a fit candidate as an adoptive parent. Appellant claims that her testimony demonstrated that she raised two children, but more importantly, that she has her own home, and she will provide for the minor child's education, religious training and medical care. However, appellant admitted in her testimony that she boarded her children with her parents and another family and visited them on weekends. Actually, her parents provided most of the parenting of her children. She also conceded that her son, Father, has a history of drug and alcohol abuse.

Moreover, even if appellant could give the child a good home, the court's duty is to provide the best available home. *In re B.J.K.*, 573 S.W.2d at 383[4, 5]. The mere fact that petitioner was financially able, morally fit, physically capable and able to furnish a home for the children is not the end of the matter. *Id. In re B.J.K.* is factually similar to the case at bar. There, as here, a child's grandparents' petition for transfer of custody and adoption was denied. The court concluded that, notwithstanding the testimony and favorable home investigation study of a social worker, the child's best interest would not be served by placement in the grandparents' home. The court considered such factors as the possibility of the mother contacting the children, and the confusion that might result to the children due to the petitioners' dual role as grandparents and parents. The court also opined that young children should, when possible, be cared for by individuals who are in good health and of such age as those who normally bear children. *Id.* at 384[6]. Accordingly, while appellant's health problems and age do not automatically disqualify her, the court should consider their effect on her ability to provide the best home for D.L.S. III during the remaining years of his childhood. We conclude the trial court did not err. Point denied.

■ Finally, appellant claims error in the trial court's finding that D.L.S.'s exposure to her has resulted in behavioral problems, such findings being speculative and not supported by the evidence. Appellant testified that when the child is with her, he does not want to leave; that he wants to live with her because the other homes are "just foster homes." However, Mrs. Koch testified that after D.L.S. III visited his grandmother "he would come back and be real quiet and tell me things she said, like trying to get him. He would tell me he didn't want to live with her." Further, Mrs. Koch testified that when appellant visited her home, appellant said that she was going to get D.L.S. III, at which time, D.L.S. III put his hands over his ears and shut his eyes. Later, when appellant repeated her statement about getting D.L.S. III, Mrs. Koch responded that he was happy at her home, and D.L.S. III nodded his head in agreement. Mrs. Koch also said that after appellant left, D.L.S. III "tore up a snow scene" that appellant had bought him, "tore up Christmas cards," "chewed on his fists," and fought with his sister. Mrs. Koch testified that D.L.S. III had demonstrated similar behavior during the first month when he initially moved in the Koch's home, and he behaved in the same manner whenever he returned from visits with appellant. Appellant contends that the child's behavior cannot fairly be attributed to her, since D.L.S. III's other grandmother also visited him that day, December 19; thus, it may well have been the other grandmother who upset him. But, Mrs. Koch testified that the other grandmother had returned for several more visits, and none of these subsequent visits upset D.L.S. III or caused him to behave destructively. Accordingly, viewing the evidence

and reasonable inferences therefrom in the light most favorable to the judgment, we do not find it unreasonable for the trial court to have inferred that it was appellant who upset the child. Further, we conclude that the trial court did not abuse its discretion in denying appellant's petition.

Judgment affirmed.

DOWD, P.J., and HAMILTON, J., concur.