**In the Interest of K.K.J.**

**L.M. and H. M., Appellants,**

v.

**C.W. and D. W., Respondents.**

No. 22087.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 5, 1999.

Susan K. Roach, Chesterfield, for appellants.

Julie C. Taylor, St. Louis, for respondents C.W. and D.W.

Melanie G. Moffat, St. Louis, for respondent Div. of Family Services.

JOHN E. PARRISH, Judge.

L.M. and H.M. appeal a judgment denying their petition for transfer of custody and adoption of K.K.J. They contend the trial court erred in concluding it was in the child's

best interest to deny their petition for custody and was in her best interest to transfer custody to other prospective adoptive parents; that they were entitled preference by reason of L.M. being the child's grandmother; that the trial court erroneously denied their motion to preclude consideration of other prospective adoptive parents' petition for custody and adoption. This court affirms.

### Procedure

The procedural history in this matter is long and tortured. L.M. is the paternal grandmother of K.K.J. She filed a Petition for Adoption in the Circuit Court of Bollinger County, Missouri, December 23, 1996. It alleged, *inter alia*, that parental rights of the child's parents had been terminated and the child had been placed in the custody of the Division of Family Services (DFS). A copy of a Judgment and Order Terminating Parental Rights of Mother and Father was attached to the petition for adoption. The judgment terminating parental rights recited that the child's mother and father consented to termination of their parental rights, found it to be in the best interest of the child for parental rights to be terminated, and ordered termination of those rights. Placement of the child in the custody of DFS was "for foster care, medical care, and placement in an adoptive home." A guardian ad litem was appointed and an adoptive home study ordered.

The docket sheets that are part of the legal file reflect that the child, L.M., L.M.'s attorney and the guardian ad litem appeared before the trial court March 27, 1997. A docket entry states the case was continued to May 22, 1997. An April 3, 1997, docket entry reflects the filing by L.M.'s attorney of a "MOTION FOR TEMPORARY CHILD PLACEMENT." An attorney for the Department of Social Services (DSS) entered an appearance April 16, 1997.

A May 21, 1997, docket entry recites that, pursuant to a telephone call from the trial judge, the case was continued. On May 23, 1997, the case was set for hearing on July 25, 1997.

The case was called for evidentiary hearing on July 25. The record reveals that L.M. was present with her attorney and DFS appeared by its attorney. A motion to intervene and a motion for continuance was filed by C.W. and D.W. who appeared with their attorney. The motion to intervene was granted. The motion for continuance was denied. L.M. presented evidence. The case was then continued to August 2, 1997, for further proceedings.

The record on appeal does not reveal any action taken on August 2. On August 6, 1997, L.M. and H.M. filed a motion for leave to file a pleading denominated "Amended Petition for Transfer of Custody and/or Temporary Child Placement and Adoption of Petitioners [L.M.] and [H.M.]." An August 11, 1997, docket entry shows the filing of a motion for "intervention as of right" on behalf of H.M. It again reflects filing of an "Amended Petition for Transfer of Custody and/or Temporary Child Placement and Adoption of Petitioners [L.M.] and [H.M.]" An August 21, 1997, docket entry states that the case was continued to August 29, 1997, "for [a]ppearance." An August 29, 1997, docket entry shows, "CAUSE set for November 20, 1997 at 9:00 A.M. for trial in Marble Hill, MO."

The legal file does not reflect the trial court took any action on H.M.'s petition to intervene or on the request of L.M. and H.M. to file their "Amended Petition for Transfer of Custody and/or Temporary Child Placement and Adoption" before the November 20 trial date.

The transcript states the appearances at the November 20 hearing. It shows the appearance of "Petitioner" (apparently L.M.) and her attorney, the appearance of "Counter Petitioners" (apparently C.W. and D.W.), and the guardian ad litem. It shows that an attorney appeared representing DFS.

The trial judge, explained, "This morning we have two matters. This is the continuation of two different cases *which have been consolidated for purposes of this hearing only.* They both regard the adoption of the same minor child,...." (Emphasis added.) The judge reviewed the files and remarked with respect to L.M.'s action that H.M. had joined in the action, that he was "now a petitioner." C.W.'s and D.W.'s attorney, Ms.

Taylor, told the trial judge her clients "would like to, ..., remain outside of the courtroom until it is time for them to present their case." The trial judge then proceeded to address various matters with appellants' attorney before hearing additional evidence. Appellants' attorney, Ms. Roach, filed a deposition with the court and told the court she wished to file another deposition that had not yet been transcribed. Ms. Roach requested leave to file the additional deposition of DFS worker Carol Maune once it was transcribed.

This court did not discern a ruling by the trial judge on the request to file Ms. Maune's deposition upon it becoming available; however, a December 4, 1997, docket entry states, "DEPOSITION OF WITNESS filed by Susan Roach, attorney for Petitioners...." The legal file includes a photocopy of a deposition identified as "Deposition of Witness CAROL MAUNE On behalf of the Petitioner." It has a Circuit Clerk of Bollinger County file-date stamp on its cover sheet that states, "DEC 04 1997."

After appellants completed presenting evidence in their case, the trial judge asked Ms. Taylor to return. She was told she could present evidence in support of C.W.'s and D.W.'s petition for transfer of custody and adoption. The only evidence Ms. Taylor presented was the testimony of her clients. At the conclusion of C.W.'s and D.W.'s evidence, DFS presented evidence. The trial judge told the parties he would make a decision after he received the deposition of Ms. Maune and reviewed it.

Judgment was entered December 18, 1997. It recites that this case and the case in which C.W. and D.W. sought custody and adoption of K.K.J. "were consolidated for purposes of hearing." It recites findings that the trial court had jurisdiction pursuant to Chapter 453, RSMo 1994; that the person sought to be adopted was born January 26, 1996, and was a minor child; that an adoption investigation of L.M. and H.M. was made and a report submitted as required by § 453.070.1, RSMo 1994; that it was not in the child's

best interests to transfer custody to L.M. and H.M. for purposes of subsequent adoption. The petition for transfer of custody to L.M. and H.M. and adoption was denied.[1]

### The Appeal

Appellants' first point on appeal asserts the judgment "was against the weight of the evidence and against the weight of the law" and constituted an abuse of discretion by the trial court. Point I recites four reasons why appellants contend the trial court erred in entering judgment against them. It asserts (1) the "overwhelming weight of the evidence" established that placement of the child with C.W. and D.W., rather than L.M. and H.M., was not in the child's best interests; (2) the trial court failed to consider an "obvious bias" of DSS and DFS against appellants that was evident from the "lack of evidence" those agencies presented; (3) the trial court did not state reasons why it was in the child's best interests for custody to be placed with C.W. and D.W. rather than L.M. and H.M.; and (4) the award of custody to C.W. and D.W. was contrary to "the weight of the home studies conducted by the [DFS] and the investigation of this matter pursuant to Section 453.070 R.S.MO," and the investigation of C.W. and D.W. and L.M. and H.M. by DFS "was inadequate, improper, biased and completely lacking in objectivity."

Point I challenges the determinations made in both adoption cases, the one brought by appellants and the one brought by C.W. and D.W. The trial court consolidated the cases only for purposes of trial. Separate judgments were entered in each case. Those parts of Point I directed to the judgment in the adoption case brought by C.W. and D.W. are not reviewable in this appeal. Appellants were not parties to that action. See In re Drew, 637 S.W.2d 772, 777 (Mo.App.1982); Matter of M.D.H., 595 S.W.2d 448, 450 (Mo. App.1980). They have no standing to appeal the judgment in C.W.'s and D.W.'s case.

This court's review is undertaken pursuant to Rule 73.01(c). "It is limited to

1. A copy of the Judgment and Order of Transfer of Custody in the case brought by C.W. and D.W. is included in the legal file. It included the finding that it was in the child's best interests for custody to be transferred to C.W. and D.W. and ordered that transfer for the purpose of subsequent adoption was subject to continuing supervision by DFS and the court.

determining whether there is substantial evidence to support the judgment, whether the judgment is against the weight of the evidence, or whether it is the result of an erroneous declaration or application of law." *Nixon v. Greenlee,* 928 S.W.2d 917, 918 (Mo. App.1996). Due regard is given to the opportunity of the trial court to judge the credibility of witnesses. *Baker v. Lake Lorraine, Inc.,* 562 S.W.2d 374, 378 (Mo.App.1978). In assessing if there is substantial evidence, this court defers to the trial court on factual issues and does not substitute its judgment for that of the trial court. *Hawk v. Director of Revenue,* 943 S.W.2d 18, 20 (Mo.App.1997). Deference to the trial court's assessment of testimony is not limited to the issue of credibility of witnesses. *Id.* It includes deference to conclusions the trial court reaches regarding issues of fact. *Id.* Greater deference is granted to a trial court's determination in custody and adoption proceedings than in other cases. *Matter of B.J.K.,* 573 S.W.2d 382, 383 (Mo.App.1978).

*(1) Evidence Concerning the Best Interests of the Child*

■ The trial court found it was not in the child's best interests to place her in the custody of L.M. and H.M. L.M. was 46 years of age. Her husband, H.M., was 62 or 63.[2] K.K.J. was 18 months old. Karen Blattner, a social service worker for DFS, had been assigned to K.K.J. before the child was placed for adoption. K.K.J. had been a child abuse victim.[3] Ms. Blattner had observed her during visits with L.M. and H.M. She testified that K.K.J.'s grandmother, L.M., made 14 visits while the child had been in DFS custody. The visits occurred from July 1996 until May 1997. Visits usually lasted an hour or hour and a half. H.M. was with L.M. during most of the visits.

Ms. Blattner was asked how H.M. reacted during the visits. She answered:

He didn't do a lot of interaction with [K.K.J.]. He mostly just sat there. Sometimes he'd read the paper. Sometimes he'd doze off. If [L.M.] would put [K.K.J.] in his lap, he would play with her, but I never saw him actually get down on the floor and play with her like [L.M.] would.

Ms. Blattner never saw H.M. initiate contact with K.K.J. or change her. She did not recall if H.M. ever fed her. Another DFS worker observed visits by L.M. and H.M. She stated that H.M. had little interaction with the child during the visits.

K.K.J.'s father is L.M.'s son. L.M. had been a single mother. There was evidence that the two of them had a close relationship and that L.M. and her son had been in contact with one another just prior to the trial even though L.M. testified they had not. The trial court expressed concern about possible future contacts between K.K.J. and her biological father if K.K.J. were in the custody of L.M. and H.M.

There was evidence that L.M. had known of K.K.J.'s neglect when the child was with the biological parents, but had not reported it, done anything to stop it, or obtained medical help for K.K.J. L.M. had observed K.K.J. in her son's home. She observed that the child looked sick and had not gained weight. She stated that K.K.J. would be put in a back room for hours and would then be brought out in three or four layers of clothing.

■ The relative age of persons seeking to adopt a child is a factor to consider in determining whether to grant or deny custody. *In re Adoption of Ann,* 461 S.W.2d 338, 341 (Mo.App.1970). "[O]ur courts have repeatedly said that 'young children should, when possible, be cared for by individuals who are in good health and *of* such age as those who normally bear children.'" *Matter of B.J.K., supra,* at 384, *citing In re Adoption of Ann, supra.* The trial court properly considered the ages of L.M. and H.M. in denying their

2. H.M. was not questioned about his age. His daughter-in-law was asked how old he was. She answered, "[H.M.] is 62, 63."

3. When K.K.J. was placed in foster care, she was four months old and weighed eight pounds. She had been in the hospital three days before she was brought to her foster parent and was diag-

nosed with failure to thrive. K.K.J.'s foster care mother described her condition, "The skin, you could pick up the skin on her legs and it was just, pull it out. It was just devastating. Her stomach was swollen. She was too weak to cry." K.K.J. had 10 broken ribs and other fractures.

petition for custody and adoption. Had L.M. and H.M. obtained custody, L.M. planned to take two months off from work; however, she intended to return to her job unless things did not "go well" during the two months she would not be working.

H.M. was retired. The trial court could infer that H.M. would be the custodian looking after K.K.J. when L.M. returned to her job. It had evidence before it that H.M. had little interaction with K.K.J. during visitations; that although he was present, he had little involvement with the child.

■ Although there was conflicting evidence concerning L.M.'s contacts with her son, K.K.J.'s father, there was evidence that the two had a close relationship. Although L.M. stated she and her son had not been in recent contact, there was evidence that they had maintained telephone contact up to the time of the hearing; that their conversations were sometimes as long as 40 and 50 minutes. Concern about future contacts by a biological parent is a factor that can be considered in denying a grandparent custody. *In Interest of D.L.S.*, 775 S.W.2d 548, 550 (Mo.App.1989).

The trial court was entitled to consider that L.M. had known of the neglectful conditions in which K.K.J. had been while with her biological parents and of the child's poor physical health at that time. *See In re Adoption of C.A.H.*, 901 S.W.2d 285, 287–88 (Mo. App.1995). She had done nothing to obtain medical treatment for the child or otherwise report the neglect.

■ There was testimony that L.M. repeatedly demeaned K.K.J.'s parents. The child would be in the room when this occurred. One social worker suggested the concern that although the child was only 18 months old at the time, this could continue as the child grew older. The worker suggested the child deserved "a new beginning without having to spend her life hearing about what terrible people her natural parents were." Demeanment of a natural parent can amount to failure by adoptive parents to sever past relationships that were harmful to the child and could be detrimental to the child's best interests. *In Interest of D.L.S.*, 775 S.W.2d

at 550–51. The trial court was entitled to consider those circumstances.

Viewed in the light most favorable to the trial court's judgment, there was sufficient evidence from which the trial court could conclude that the best interests of the child would not be served in granting custody to L.M. and H.M. Giving the deference the findings of the trial court is entitled to receive, that determination was not against the weight of the evidence. Prong (1) of Point I is denied.

*(2) Appellant's "Obvious Bias" Claim*

■ Prong (2) of Point I claims the trial court did not consider the "obvious bias" of DSS and DFS in denying appellants' petition for transfer of custody of K.K.J. Appellants contend this "obvious bias" was evident by a lack of evidence the agencies presented.

■ Appellants overlook who had responsibility for presenting evidence in their action for custody and adoption. The petitioners in custody proceedings have the burden of proof to establish facts justifying transfer of custody. *In re Neusche*, 398 S.W.2d 453, 458 (Mo.App.1965). It is the trial court's duty to assess the quantity and quality of evidence presented. *Hawk v. Director of Revenue*, 943 S.W.2d at 20. Appellate courts, mindful that "a trial court has the prerogative when weighing witness credibility to accept or reject all, part, or none of the testimony of any witness," defer to trial courts' determinations in those respects. *Id.* Prong (2) of Point I is denied.

*(3) Failure of Trial Court to State Specific Reasons Why Transfer of Custody to L.M. and H.M. was not in K.K.J.'s Best Interests*

■ Prong (3) of Point I asserts it was error for the trial court to deny appellants' petition for transfer of custody and adoption because the trial court "completely failed to set forth any reasons why it was of the opinion that it was in the best interest of the minor child to be placed in the custody of [C.W.] and [D.W.] as opposed to [appellants]." The trial court's determination of what was in the child's best interests with respect to granting or denying a request for custody was an ultimate conclusion based on

the totality of the evidence presented to the trial court. *In re S.L.B.*, 964 S.W.2d 504, 509 (Mo.App.1998). It is a subjective assessment of that evidence. It was not required to itemize factors on which it relied in ascertaining what was in the child's best interests. Evidence presented to the trial court will not be reweighed by appellate review. *In Interest of J.N.C.*, 913 S.W.2d 376, 380 (Mo.App. 1996). Prong (3) of appellants' Point I is denied.

*(4) Home Studies*

■ Prong (4) of Point I contends the trial court erred because its award of custody to C.W. and D.W. was contrary to "the weight of the home studies conducted by [DFS] and the investigation of this matter pursuant to Section 453.070 R.S.MO." This complaint appears to be directed to the judgment in C.W.'s and D.W.'s case rather than appellants. As heretofore held, appellants have no standing to appeal that determination. To the extent the issue that is attempted to be raised could be construed as a challenge to the trial court's denial of appellants' petition, two factors warrant comment. First, although the trial transcript reflects both home studies were admitted in evidence, appellants did not provide them to this court. Second, appellants misconstrue the purpose of the investigative report required by § 453.070, RSMo Supp.1997. Its purpose is to *apprise* the court of the circumstances of the parties to an adoption proceeding with respect to the best interests of the child whose adoption is sought. *In re G*, 389 S.W.2d 63, 65–66 (Mo.App.1965). It does not *adjudicate* the issues presented. That is the function of the court. The report is a tool provided the trial court. Prong (4) is of no consequence. Point I is denied.

■ Point II asserts that the trial court's judgment "was against the weight of the evidence and against the weight of the law" because the trial court "failed to take into consideration the requirements of Section 210.565 R.S.MO."

The statute that Point II asserts was not considered is not relative to the issues that were before the trial court. It applies to foster care placements, not adoptive placements. Section 210.565, RSMo 1994, provides that when a child is placed in a foster home, DFS is to give preference and first consideration to placement with relatives of the child; that grandparents who request consideration are to be given preference and first consideration. Adoptions are governed by Chapter 453.

The only preference granted in chapter 453 is in § 453.070.7, RSMo Supp.1997. That statute gives a preference for purposes of adoption to persons who have cared for a child as foster parents continuously for a period of 12 months or more. That was not the situation in this case. Point II is denied.

Appellants' final point, Point III, asserts that the judgment "was against the weight of the evidence and against the weight of the law" because the trial court did not grant "appellant's [sic] motion in limine ... wherein the appellants requested that the court preclude and prevent the introduction into evidence by the [DFS] petitions by other prospective adoptive parents...."

■ Point III is of no consequence. The denial of a motion in limine is interlocutory and presents nothing for appellate review. *Ellis v. Jurea Apartments, Inc.* 875 S.W.2d 203, 210 (Mo.App.1994). Notwithstanding, this court notes that the argument directed to Point III is directed to the fact that the trial court consolidated separate petitions for adoption for trial. That procedure has been upheld in circumstances similar to those in this case. *See, e.g., In re Adoption of K.L.G.*, 639 S.W.2d 619, 621–22 (Mo.App.1982). Point III is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.